JOSEPH STOWELL *vs.* NEWTON BUSWELL.

Essex. Nov. 8, 9, 1882. — Sept. 6, 1883.　C. ALLEN, COLBURN & HOLMES, JJ., absent.

A. conveyed a parcel of land, the northerly line being described as running fifty-four feet and four inches on a certain street, and the west line as running one hundred and the east line one hundred and five feet southerly, and both at right angles with the street, as conveyed to A. in three deeds, referred to, and called in the last deed lot No. 27, "meaning and intending to convey. all the land as now fenced." One of the deeds referred to conveyed a parcel of land called No. 27, the side lines of which extended back from the street the distances named in A.'s deed. The northeast corner of the lot was subsequently sold to B. and the remainder to C., and they conveyed to A., and their deeds were two of the deeds referred to in the deeds made by A. At the time A. made his deed there was no fence along the southerly line of lot 27, but twenty-one feet north of this line was a fence extending part way across the lot, on the southerly line of the parcel sold to B. In extension of this fence was a gate and a shed, and the three ran entirely across the lot. *Held*, that the deed of A. conveyed the whole of lot 27; and that parol evidence was inadmissible to show that A. intended to convey only to the fence.

WRIT OF ENTRY, dated March 8, 1881, to recover a parcel of land in Haverhill. Plea, *nul disseisin.* The writ described the land as bounded southerly by lot No. 13, and land now or late of Ira G. Bean, fifty-four feet six inches; easterly, twenty-one feet, by land now or late of the heirs of Nehemiah Emerson; northerly, by land now or late of Nathaniel K. Johnson, fifty-four feet six inches, and westerly, by land of Kendall Flint, twenty-one feet, being the southerly part of lot conveyed by E. C. Sargent to said Bean. Trial in the Superior Court, before *Staples*, J., who allowed a bill of exceptions, in substance as follows:

The demandant put in evidence the following deeds: 1. A deed from Henry Emerson and others to Timothy Cole, dated May 16, 1851.  2. A deed from Timothy Cole to John Fuller, dated July 3, 1882.  Each of these deeds described the premises as lot 27, and bounded, on the north, by Orchard Street, fifty-four feet four inches; east, by lot 26, one hundred and five feet; south, by lot 13, fifty-four feet six inches; and west, by Kendall Flint's land, one hundred feet.  [The premises were shown on a plan used at the trial, and a copy of which is printed in the margin.*  Lot 27 includes the three parcels marked A, B and C.]  3. A mortgage deed from Fuller of the lot to Ruth Hayes for $400, which mortgage was assigned to Stephen Minot.  4. A second mortgage deed from Fuller of the lot to said Minot.  5. A deed from Fuller of the lot to Albert Sargent, subject to the mortgages.  6. A deed from

* Orchard Street.
54 feet 4 inches.

N

Kendall Flint. 100 feet.

Emerson heirs. Lot 26. 105 feet.

A

B

Shed.        Gate.          Fence.

C
Demanded
premises.

21 feet.

21 feet.

54 feet 6 inches.

Lot 13.

Sargent to Goodell.  7. A deed from Goodell to Emily C. Sargent, wife of Albert Sargent.  8. A deed from Albert Sargent and wife, on May 9, 1855, to Ira G. Bean, of a part of lot 27, subject to the two mortgages.  This conveyance was by metes and bounds, and included the lots marked A and C on the plan.  9. A deed from Sargent and his wife, on February 2, 1860, to Mary Ann Robinson, of the remaining part of lot 27, describing by metes and bounds the lot marked B on the plan.  This conveyance was also subject to the mortgages.

On August 3, 1859, Minot made an entry in due form upon the land to foreclose his mortgages; and on May 12, 1860, assigned the two mortgages to the demandant.  On the same day, Bean made a quitclaim deed to the demandant of his right, title and interest in the lot of land conveyed to him by Sargent and his wife; and Mrs. Robinson and her husband made a similar deed to the demandant of their interest in the land conveyed to Mrs. Robinson by the deed of Sargent and his wife.

The demandant also put in evidence a bond for a deed, (produced by the tenant upon notice,) dated May 12, 1860, given by him to Bean and Mrs. Robinson, in which he agreed, on payment by them of $1590 within a specified time, to convey to them a parcel of land in Haverhill, "particularly described in the deed of Timothy Cole to John Fuller, dated July 3, 1852," with reference to the book and page of the record in the registry of deeds.

The tenant put in evidence a warranty deed of the demandant to James H. Carlton, dated October 8, 1863, in which the premises conveyed are described as follows: "A certain lot of land in said Haverhill, with the buildings thereon, bounded and described as follows, measuring fifty-four and one third feet on Orchard Street, and the west line running one hundred feet and the east line one hundred and five feet southerly, and both at right angles to Orchard Street, as conveyed to me by the several deeds of Stephen Minot, dated May 10, 1860, and of Ira G. Bean and Mary A. Robinson and husband, dated May 12, 1860, said deeds being recorded with Essex Deeds, book 606, leaf 288, and is the same lot of land originally conveyed by Henry Emerson and wife and others to Timothy Cole, by deed dated May 16, 1851, and called in that deed lot No. 27, — and is sold by me

subject to the conditions and restrictions contained in that deed, meaning and intending to convey all the land as now fenced."

The demandant testified, that a short time before May 12, 1860, one Joplin, a real estate agent and broker in Lawrence, came to him and wanted him to lend $1500 to Bean and Robinson, to take up a mortgage held by Stephen Minot on their premises in Haverhill, on which mortgage Minot had made an entry to foreclose; that he replied that he would lend them the money if the title was good; that he went to Haverhill with Joplin, and met Bean and Robinson in the house on the premises; that they pointed out no bounds to the lot, but said it was fifty-four feet on Orchard Street, and ran back one hundred feet and one hundred and five feet to lot No. 13, and that the lot was called lot 27; that, after arranging about the money, they all went to said Minot's, and it was there agreed that the mortgages should be assigned to him; that he said he wanted the mortgages assigned to him, so that he could have a good title through the mortgages; that Minot assigned the mortgages to him, and that he paid Minot for the same $1372, as stated in the assignment; that Minot said the mortgages would give him a bottom title; that he did not know what might have intervened to affect the title to the lot since the date of the mortgages; that after the assignment of the mortgages, on the same day, he went with Bean and Robinson upon the lot, and then each released to him, as aforesaid, all their right, title and interest in the lot as described in the mortgages; that he then paid them something over $100 more than enough to pay the mortgages, — $20 or $25 might have been included in that sum for his charges, or for a bonus; that he then gave Bean and Robinson the bond hereinbefore mentioned, obligating himself to reconvey the premises to them on payment of $1590 in one year, they to have the occupation of the premises, in the mean time paying all taxes, insurance and repairs; that, after the time named in the bond, they notified him they could not pay the sum therein named, and gave up the keys to him, and he took possession, in August or September, 1861; that, at the time the keys were delivered up, nothing was said about the bond; that, after Bean gave up the keys, he never claimed to own the strip of land in question.

The demandant further testified, that, when he went to see the premises on May 12, 1860, there was a fence on Orchard Street, and on both the east and west sides of the lot, and there was a fence twenty-one feet northerly of lot No. 13 and parallel to the north line thereof, running across the lot No. 27 to the middle thereof from west to east, and for the rest of the distance across said lot was a shed and a gateway standing in a line with said fence, and this was the situation of the premises at the time of the deed to Carlton ; that he, the demandant, was a stranger to the premises, and only knew its extent by the deeds and by what Bean and Robinson told him ; that on the south side of the fence last named, and near to it, stood a small dwelling-house, on the demanded premises, where he understood Bean lived, and there was no fence between lot No. 13 and the demanded premises ; that he did not know that lot No. 27 or the Minot mortgages extended any farther than the rear fence, till 1872, about the date of the suit of Johnson against Bean * to recover a part of the same premises, when Bean came to him and wanted him to release the demanded premises to him; that Bean died in 1875 or 1876; that, after the keys were given up to him, he rented the property north of the demanded premises about two years, till he sold to Carlton for $1800; and that he had never made any demand for the land now sued for till about the time of the commencement of the present suit; that since Bean's death he had learned that the demanded premises together with lot 13 had been sold in two separate parcels, but in one deed, by Bean's heirs, to the tenant ; that he did not know what became of the mortgage notes held by Minot, when he assigned the mortgages to him ; that he intended and supposed he did convey to Carlton all the land which Minot's mortgages and Bean's and Robinson's deeds covered, and did not then know that the Minot mortgages extended any farther than the back fence.

The words "meaning and intending to convey all the land as now fenced," the demandant testified, were inserted in his deed to Carlton at the latter's request, who declined to take the deed unless those words were inserted.

---

* This case is reported 119 Mass. 271.

The demandant also testified, that he did not understand that, by force of the quitclaim deeds and assignments to him, and his said bond to Bean and Robinson, he became a mortgagee.

The judge ruled that the demandant's right to recover was founded on a mortgage title; that the assignment of the quitclaim deeds to the demandant and his bond to Bean and Robinson constituted a mortgage, and, under the pleadings in the case, the demandant could not recover, as there was no statement of seisin in mortgage; and that, under the proper construction of the demandant's deed to Carlton, the demanded premises were conveyed to Carlton, and the demandant had no title in the same.

The demandant asked the judge to rule, that no objection to the demandant's right to recover was open to the tenant in this form under the pleadings, even supposing him to be a mortgagee. The judge refused so to rule.

The demandant offered to show acts and acquiescence by Carlton and Bean in the ownership of the land conformable to the premises as fenced; that Carlton and his grantees actually occupied to the fence and did not claim beyond; and that Bean occupied the demanded premises after the deed to Carlton, to the exclusion of Carlton, claiming that the land was his, and that the deed to Carlton did not cover it. The judge excluded all said evidence.

The judge further ruled, that, upon the foregoing facts, the demandant was not entitled to recover, and directed a verdict for the tenant, which was entered. The demandant alleged exceptions.

*J. C. Sanborn*, for the demandant.

*N. C. Berry*, for the tenant.

W. ALLEN, J. The court correctly ruled that the demandant's deed to Carlton included the demanded premises, and properly excluded the parol evidence offered to affect its construction. The boundaries given in the deed are "measuring fifty-four and one third feet on Orchard Street, and the west line running one hundred feet and the east line one hundred and five feet southerly, and both at right angles to Orchard Street." The land is also mentioned as "lot No. 27," and there are also three other separate descriptions by references to former deeds. All these descriptions plainly include the demanded

premises, and the demandant's title rests upon the assumption that they do. The only ground upon which it is contended that there is any ambiguity in the deed to Carlton is found in the words at the close of the descriptive part, "meaning and intending to convey all the land as now fenced." It appeared that there were fences upon Orchard Street, and upon the east and west sides of the land, extending the distances named in the deed, but there was no fence upon the south side. There was a fence extending half-way across the lot from the east side twenty-one feet distant northerly from the south line of all the descriptions before referred to; and westerly from the fence were a gateway and shed extending to the west side of the lot.

The demandant contends that the fact of the fence, gateway and shed extending across lot No. 27 twenty-one feet from its southerly boundary, and the fact that there is no fence upon its southerly boundary, render the deed ambiguous as to the southerly boundary of the granted premises, so as to let in the parol evidence offered. But that boundary is fixed, not only by the length of the east and west lines given in the deed, but also by referring to the premises as lot No. 27, and by three distinct references to separate deeds which are clear and unambiguous. To refer to one of them, the deed of Bean. By the deed to Bean of May 9, 1855, the westerly and southerly parts of lot 27 were conveyed to him, and in 1860 the remaining part, being the northeasterly corner of lot 27, was conveyed to Robinson, thus dividing it into two lots; one of them, the Bean lot, including, by particular description, the demanded premises. The fence referred to was between a part of the Bean lot, being a part of the demanded premises, and the Robinson lot, and the gateway and shed were wholly on the Bean lot, and had no connection with the Robinson lot. The existence of the fence and shed raises no ambiguity in the description of the land in parcels by reference to the Bean and Robinson deeds. Without question, the shed was upon one parcel, and the fence was the boundary between the two. If this were the only description in the deed to Carlton, it would not be contended that the expression "intending to convey all the land as now fenced," would raise a doubt whether the whole of the Bean lot and of the Robinson lot were included in the description.

And the same conclusion would be reached by an examination of the other deeds referred to. The demandant was the owner of the whole of lot No. 27; he conveyed it by a reference to the name of the lot, and by lines and distances, and by reference to former deeds, all clearly including the whole of it; and the words inserted, with the fact that there was no fence upon one side of the lot, and that there was a fence running partly across it, on the line between two parcels into which it had been divided, and which are separately referred to in the deed, do not disclose any ambiguity in it. The provision itself was not apparently intended for a description of the land as bounded on all sides by fences, but to indicate that it included all the land within the boundary fences which were there; it does not exclude land outside of a boundary fence, nor exclude a boundary where there is no fence.

It was admitted that, if this ruling of the court below was sustained, it would be decisive of the case; and it is not necessary to consider the other questions argued.

*Exceptions overruled.*