JOHN OLSON *vs.* EDWIN KEITH.

Plymouth. November 13, 1894. — January 1, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Deed — Boundary — Ambiguity.*

If a deed fixes exactly the location of all the lines and boundaries of the land conveyed, its construction cannot be controlled or affected by parol evidence.

A deed described the land conveyed as beginning at a point in the line of a private way, which ran westerly from C. Street, at the southwest corner of A.'s lot, thence northerly in a line parallel with C. Street and by the land of A. a certain number of feet to an angle, thence northwesterly "in line of a stone wall" and

by land of B. a certain number of feet, "more or less, to a point," thence southerly "in a line parallel with said C. Street" a certain number of feet, more or less, to the line of the private way, and thence by the way "sixty feet" to the place of beginning. A survey showed the length of two of the lines other than that on the private way to be somewhat less than the distance stated in the deed, which was qualified in each instance by the words "more or less." *Held,* that this part of the description was controlled by the location of the lines and monuments; and that there was no legal ambiguity in the deed.

WRIT OF ENTRY, to recover a parcel of land in Brockton, being the parcel included between the lines A B C E G, as shown on the following plan.

COPELAND STREET.

Plea, *nul disseisin,* and a disclaimer of title as to so much of the parcel as lies east of the line D G.

Trial in the Superior Court, before *Bishop,* J., who allowed a bill of exceptions, in substance as follows.

The demandant put in evidence a deed from the tenant to him, dated December 3, 1889, in which the premises conveyed were described as follows: " Beginning at a point in the northerly line of a private way which runs westerly from Copeland Street, near the residence of William King, and at the southwest corner of said King's house lot; thence northerly, in a line parallel with said Copeland Street, and by land of said King and land of one Sturgis, one hundred and ten feet to an angle; thence northwesterly, in line of a stone wall, and by land of

Charles Dickerman and C. J. Turner, one hundred and forty-eight (148) feet, more or less, to a point; thence southerly, in a line parallel with said Copeland Street, two hundred and forty feet, more or less, to the north line of said private way; and thence by the said way sixty (60) feet to place of beginning."

Benjamin R. Chapman, called as a witness by the defendant, testified that he made a location by establishing a base line; that he located certain points about the premises, and made the plan from the location of bounds existing thereon; that he found at A on the plan a stone bound and gas pipe close together; that he located a stone bound half-way between A and B, and then located B, C, and G and a stone bound east of the wall at the northwest corner of the Turner lot, also two stakes on the line E G, nearly opposite C; that the distance from A to B was 110 feet; that he located E by measuring on the plan 148 feet in the line of the stone wall; that the distance from E to G was approximately 241 feet, from E to F 239.5 feet, from A to G 60 feet, and from A to F 81.5 feet; that there were two stakes at B, and the distance between these stakes and the bound C, which was the end of the stone wall, was ten feet and ten feet three inches, respectively; that the line E F and the line D G were parallel with Copeland Street; that there was no bound at F, there was a pipe or stake at G, and there were two stakes as located on the plan in the line E G, one stake being nearly opposite C and 60 feet distant from it; that he discovered the line A B by the occupation of the land and the direction of the bound at the corner of the Sturgis and King lots; that the location at C was the end of the wall, and he remembered no bound mark there; that he found a drill hole in the wall at the bound D, and looked around to see what bounds there were to indicate lines, and did not find any; that he found no monument, bound, stake, or gas-pipe at the point E; that a week or two after making the plan he read over the deed; that he got the point E by drawing through G and through one of the stakes located in the line E G opposite C; that the demandant called his attention to a stake opposite C in the line E G; that some people used a stake as a permanent bound, but that he did not remember what kind of a stake this one was, and would not want to say whether it was or was not put as a permanent

bound; that marks at A, B, and G were all the bound marks he found; that the distance from E to the first stake in the line of E G was 88 or 89 feet from G, the distance between the two stakes was 40 to 45 feet, and from C to the second stake in the line E G was about 60 feet; that he did not know the exact location of Copeland Street, but that the stone bound was about 99.3 feet west from the street; and that the measurements or calculations for this plan were made on April 21, 1890, and he then saw the bounds and stakes.

There was no evidence as to when the drill-hole at the bound D was made, or for what purpose, nor when the other stakes or bounds were put down, except such evidence as was furnished by the demandant, who testified that the tenant, while standing with him in the private way called Carleton Avenue, said, "There is a piece of land I will sell you"; that he went to work and measured out the land; that he came to G, walked on to the lot, and then came to the bound A; that the tenant took his tape-line and told the demandant to put the line on the centre of the stone at A, and measure to the bound G; that they went down to the stone wall, which lies in the line C E, to the point C; that he put the line from A to B, and made two measurements to the point B; that there was a stone half-way between A and B, and there was a gas-pipe at B; that they then measured across the lot from C 60 feet to a bound in the line E G; that the demandant put a stake down at this point by the direction of the tenant, who then went to the bound G, and sighted from G over the stake which had been put down, and the demandant put down two other stakes in the line G E and in the direction of the point E by the orders of the tenant, and a corner stake at a point close to the stone fence at the point E; that the tenant pointed out a flat stone on the stone wall at this point; that they then measured the distance on the stone wall from the point C to the point E; that the tenant told the demandant to take the tape-line and place it as near that point, which was the end of the stone wall, as possible; that the two were standing at the point C at the time; that the tenant measured off along the stone wall 50 or 60 feet, and took up a piece of wood and placed it down at this point; that the demandant followed along and measured from this stake in the direction of the stone wall, and

the tenant put down a second stake, to which they measured; that they then went along the third time to the point E; that the demandant thought there was a pipe at C; that when they got to E it was all measured, and then they came back; that a wooden stake was put down at E; that the tenant put down the measurements that he had taken on a piece of paper or in a book; that he afterward figured them out and told him there were 60 feet on the private way, 110 feet between the King and Sturgis lots, and the westerly line, G to E, was 240 feet, and there were 148 feet on the stone wall; that he did not measure or say anything about the distance from B to C; that the demandant agreed to pay $150, and took possession at once, and got the deed a few days after, namely, on December 3, 1889; that he saw the tenant next in the early spring following; that he met the tenant on the land, and saw that a bound was down on the westerly line; that he also saw that gas-pipes had been put down in the line G D at two points; that when he found the second pipe he turned and said, "What have you done, Edwin Keith?" and that the tenant replied, "Well, Mr. Olson, I made a mistake. I am going to take this land and give you this" (pointing to the land on the opposite side of the line D G).

The demandant further testified that he had cleared the land entirely before this time, and the pipes were not there then; that the stakes had remained in the line E G up to that time; that a short time after this they met on the sidewalk, and the tenant asked the demandant if he would be kind enough to let him have the land, as he wanted to strike a jog in from a point in the line D G 100 feet from the private way, and to the point D; that there were conversations between them afterwards, in which the tenant offered the demandant a quantity of loam, stones, wood, and money for this land, if he would let him have it; that thereafter the tenant's son came with surveyors and staked off the land, and later a fence was put up on the line D G; and that the demandant had not had possession of the land beyond that line since.

There was evidence that the tenant had some talk with the demandant about going out on some private way north from Carleton Avenue that was to run east and west; that the de-

mandant understood that the lot was to be 60 feet wide on Carleton Avenue, but that the tenant did not say that the lot was to be parallel with Copeland Street, or how wide the lot was to be, and that the demandant did not understand that it was to be 60 feet wide ; that some time in the spring the tenant told the demandant that there was a mistake in the deed, and he wanted to change it ; that the demandant let the tenant have the deed ; and that two days after the demandant took the deed away from the tenant again. There was no evidence as to what the number of feet in the lot was to be.

The demandant also testified that, after the measurements were made, he asked the tenant if all that land was to be his, to which the tenant replied, "Yes" ; that he asked if a large rock, which he located on the land on the line E G where he had put the stakes on the northerly corner a foot in on this land, was on his land ; that the tenant replied, "Well, it might come half a foot" ; and that the demandant answered, "Well, if there ain't more than half a foot, I sha'n't kick then."

Albert Bates testified that he was familiar with the locality ; that he was at the lot three or four days after the demandant took possession, and saw three stakes in the line G E outside of the fence as it now stands ; that he measured from the centre of the wall where the wooden fence now is at the bound D to a stake in the line E G, and it was somewhere about 18 feet ; that at the time there was a bound mark at the point E, a wooden stake beside the wall, "as near as a surveyor would naturally put it, because he couldn't get it in the stone of the wall" ; and that this was in the fall, earlier than December.

The counsel for the tenant stated there would not be any dispute that the stakes were located in the line G E .

The above evidence was admitted without objection on the part of the tenant, and it was all the evidence material to the case.

The tenant requested the judge to rule as follows : "Upon the demandant's proof, the tenant is entitled to a verdict, because, upon the construction of the deed as applied to the marks upon the face of the earth, it cannot include anything more than a lot of land to which the tenant disclaims any title ; and according to the terms of the deed, as applied to the monuments which

are now known upon the testimony, the deed describes the lot A B C D G, and no other lot or more land."

The judge so ruled ; and directed the jury to return a verdict for the tenant. The demandant alleged exceptions.

*E. O. Achorn*, for the demandant.

*H. Kingman*, for the tenant.

KNOWLTON, J.   On the undisputed facts of this case the deed from the tenant to the demandant fixes exactly the location of all the lines and boundaries of the lot conveyed, and its construction cannot be controlled or affected by parol evidence. *Cook* v. *Babcock*, 7 Cush. 526.   *Stowell* v. *Buswell*, 135 Mass. 340.

The boundary A on the plan is the starting point, at the southwesterly corner of William King's house lot, and is not in dispute.   The line A B is the westerly boundary line of the lots of King and Sturgis, and is not in dispute.   The point G is fixed at 60 feet from the point A, on the northerly line of the private way, and the line G D is fixed as having one end at G and running parallel with Copeland Street.   It strikes the wall at D, which is a point 148 feet, more or less, from the corner at B. The only way of fixing exactly the point D is by running the line G parallel with Copeland Street until it strikes the wall, and the deed does not purport otherwise to show where on the wall the terminal boundary is.   The length of the line on the wall is given in feet, with the qualification " more or less." While the survey shows the length of two of the lines to be somewhat less than the distance stated in the deed, this part of the description is controlled by the location of the lines and monuments, and there is no legal ambiguity in the deed.   *Morse* v. *Rogers*, 118 Mass. 572.

*Exceptions overruled.*