## HORNET v. DUMBECK.

[No. 5,760. Filed October 10, 1906. Rehearing denied December 14, 1906. Transfer denied February 8, 1907.]

1. TRIAL.—*Quieting Title.—Special Findings.—How Considered on Appeal.*—The special findings in a quiet-title case must be considered with reference to the law requiring plaintiff to recover upon the strength of his own title, to prove the allegations of his complaint by a preponderance of the evidence, to present facts and not mere evidence or conclusions in the special findings, facts not found being taken as not proved. p. 490.

2. DEEDS. — *Descriptions. — Contradictions.* — A deed describing the land conveyed as "60 acres off the south end of" a certain quarter section, and further describing it as "commencing at the southwest corner of said west half of said southwest quarter, running thence north 120 rods, thence east 80 rods, thence south 120 rods, thence west 80 rods to the place of beginning," is contradictory, where. such quarter section was 20.90 chains wide across the south end and 20.77 chains wide across the north end; and either of such descriptions standing alone would be sufficient. p. 491.

3. SAME.—*Descriptions.—General.—Particular.*—Words of particular description in a deed control general terms of description where both cannot stand together. p. 491.

4. SAME.—*Descriptions.—General.—Particular.*—A prior definite general description in a deed controls a subsequent, limiting particular description in such deed, unless the particular description purports on its face to be a limitation of such general description. p. 491.

5. SAME.—*Descriptions.—Contradiction.—Election.*—Where two different descriptions are set out in a deed, the grantee may elect which description he will accept, but, to give effect to such election, he must manifest same by some appropriate conduct. p. 493.

6. SAME.—*Descriptions.—Uncertain.—Oral Evidence to Explain.*—Where the description in a deed is so imperfect as to leave the intent uncertain, the declarations and acts of the parties are admissible in evidence to clear up the uncertainty. p. 493.

7. EVIDENCE.—*Oral.—Contradicting Deeds.*—Oral evidence is admissible to show which of two conflicting descriptions in a deed is true, although such evidence does contradict one of such descriptions. pp. 493, 497.

8. DEEDS.—*Descriptions.*—*Contradiction.*—A deed describing the granted land as "20 acres off of the north end of the west half of the southwest quarter" of a certain section "being 80 rods east and west and 40 rods north and south, containing 20 acres of land, more or less, being all of said west half not sold" to another grantee, is contradictory, where such quarter section was 20.77 chains wide across the north end and extended more than 40 rods south to the lands of such former grantee; and either of such descriptions standing alone would be sufficient. p. 494.

9. SAME. — *Descriptions.* — *Doubts.* — Where a description in a deed is doubtful, such doubt must be resolved against the grantor. p. 496.

10. SAME.—*Descriptions.*—*Doubts.*—A deed to "20 acres off of the north side" of a certain tract of land, being all of the land in said tract not theretofore conveyed, conveys title to all of such undisposed of tract, though it contains more than "20 acres." p. 496.

11. BOUNDARIES. — *Fences.* — *Deeds.*—*Contracts.*—*Principal and Agent.*—*Husband and Wife.*—An agreement between the husband and an adjoining land owner, without the wife's knowledge or consent, as to the building of a partition fence on a disputed boundary line between her land and that of such adjoining owner, is not binding on her. p. 496.

12. EVIDENCE. — *Deeds.*—*Records.*—*Defective Acknowledgments.* —*Justices of the Peace.*—*Curative Statutes.*—The curative statute of 1891 (Acts 1891, p. 336) cures any defect in a prior acknowledgment of a deed by a justice of the peace; and the record of such deed is admissible in evidence. p. 497.

13. SAME. — *Deeds.* — *Boundaries.* — The owner of a part of a tract, who has all of the land called for by his deed cannot complain of the admission, in evidence, of deeds tending to increase the adjoining proprietor's tract, where none of such owner's part is taken. p. 497.

14. ESTOPPEL.—*Deeds.*—*Boundaries.*—The fact that the owner of the north part of a tract of land took a quit-claim deed, from a remote grantor, to a small tract of land, the title to which was in dispute between such owner and the owner of the south part of such tract, does not estop such north owner from claiming such disputed piece under the prior deed where such deed gave it to him. p. 498.

From Noble Circuit Court; *Lemuel W. Royse,* Special Judge.

Suit by John Dumbeck against John Hornet.   From a decree for plaintiff, defendant appeals.   *Affirmed.*

*H. G. Zimmerman, Joseph L. Mayer* and *Robert W. McBride,* for appellant.

*Luke H. Wrigley,* for appellee.

BLACK, J.—The complaint of the appellee against the appellant, filed August 12, 1904, contained two paragraphs. In the first it was sought, in the ordinary short form, to quiet the appellee's alleged title in fee simple to the west half of the southwest quarter of a certain section of land in Noble county, excepting sixty acres off of the south end thereof.   In the second paragraph the appellee sought both to quiet his title to, and to recover possession of, certain real estate described as commencing at a point on the west line of the west half of the southwest quarter of said section, thirty chains north of the southwest corner thereof; thence east to a point on the east line of said west half, thirty chains north of the southeast corner thereof; thence south on said east line one and twenty hundredths chains; thence west to a point on said west line one and twenty hundredths chains south of the place of beginning; thence north on said west line to the place of beginning, containing two and one-half acres of land.   There was an answer of general denial, and the cause was tried by the court, special findings being rendered.   The facts were stated substantially as follows: January 16, 1885, James M. Harrison was the owner in fee simple of the real estate in Noble county described as follows:   "The west half of the southwest quarter" of said section.   On that day he sold and agreed to convey by deed to John P. Magers sixty acres of land off of the south end of said west half, and Magers on that day purchased said sixty acres of said Harrison.   On the same day, in consummation of said sale and purchase, Harrison and his wife executed to Magers a deed duly acknowledged, describing

the land thereby conveyed as follows: "Sixty acres off of the south end of the west half of the southwest quarter of section twenty-eight, township thirty-three north, of range eleven east, more particularly described as follows, to wit: Commencing at the southwest corner of said west half of said southwest quarter, running thence north one hundred twenty rods; thence east eighty rods; thence south one hundred twenty rods; thence west eighty rods to the place of beginning." This deed was recorded in the deed records of Noble county, February 27, 1885. It was stated by the court in its findings that it was the intention of Harrison and Magers that this deed should convey to Magers sixty acres of land off of the south end of said west half; that nothing was said prior to the execution of the deed about the length north and south of the tract to be conveyed, the agreement being simply to convey sixty acres of land off of the south end of said west half, "which land the court, construing said deed in the light of the extrinsic facts shown by the evidence, finds as a fact is the land that was conveyed to him by said deed." It was further stated that when this deed was made Harrison had no knowledge that the dimensions of said west half were different in any way from forty chains (one hundred sixty rods) in length north and south, and twenty chains (eighty rods) in width east and west.

The special findings show the making of a number of intermediate conveyances, by deeds duly acknowledged and recorded, transmitting the title from Magers to Jacob Hornet, father of the appellant, and the conveyance November 18, 1902, from said Jacob Hornet to the appellant by deed duly acknowledged, recorded June 23, 1903, "under which deed the defendant is now holding as grantee." In all these deeds the description of the land conveyed was the same as in the deed from Harrison to Magers. June 5, 1885, Harrison, "being still the owner in fee simple of all of said

west half of said southwest quarter of said section twenty-eight, excepting said sixty-acre tract sold and conveyed to said Magers, as aforesaid, sold and agreed to convey by deed to Josephine Dumbeck, the plaintiff's wife, all of said west half except said tract of sixty acres off of the south end thereof, theretofore sold and conveyed to said Magers, as aforesaid, and said Josephine Dumbeck, on said day, purchased said real estate from said Harrison." June 6, 1885, Harrison and his wife, "in consummation of said sale and purchase, executed to said Josephine Dumbeck a deed, duly acknowledged, describing the land thereby conveyed as follows: 'Twenty acres of land off of the north end of the west half of the southwest quarter of section twenty-eight, township thirty-three north, of range eleven east, being eighty rods east and west and forty rods north and south, containing twenty acres of land, more or less, being all of said west half not sold to John P. Magers.'"

It was stated by the court that it was the intention and purpose of Harrison and Josephine Dumbeck that this deed should convey to the latter all of said west half, excepting sixty acres off of the south end thereof, "which land the court, construing said deed in the light of the extrinsic facts shown by the evidence, finds as a fact is the land that was conveyed to said Josephine by said deed, and that she became the owner in fee simple of said real estate by virtue of said deed, which deed was, on June 18, 1885, recorded in said deed records." It was further found that July 2, 1891, Josephine Dumbeck and her husband, the appellee, executed to Amanda E. Worden a deed, duly acknowledged, whereby they conveyed to her twenty acres off of the north end of said west half, and on that day said Amanda, who was unmarried, conveyed said real estate to the appellee, by a deed duly executed and acknowledged; that both of these deeds were on said day recorded in said deed records, and by virtue of said deed last described the appellee be-

came the owner in fee simple of the real estate thereby conveyed; that Josephine remained the owner in fee simple of the real estate conveyed to her by Harrison, excepting said twenty acres off the north end thereof conveyed to said Amanda, from June 6, 1885, until August 10, 1904, when she and her husband, the appellee, executed to Luke H. Wrigley a deed, duly acknowledged, whereby they conveyed to him the west half of the southwest quarter of said section twenty-eight, excepting sixty acres off of the south end thereof, "being all of said west half except the part thereof sold and conveyed by James M. Harrison to John Magers;" which deed was, November 5, 1904, recorded in . said deed records; that Wrigley, August 12, 1904, and before the commencement of this suit, executed to the appellee a deed whereby he conveyed to the latter said real estate last above described, which deed was, November 5, 1904, recorded in said deed records; "that said real estate so conveyed to the plaintiff by said deed is the real estate described in the first paragraph of the complaint; that said plaintiff by virtue of said deed became the owner in fee simple of said real estate and now so owns the same; that · the defendant sets up and asserts a claim of right in and title to said real estate, which claim is unfounded, adverse to the plaintiff's rights, and constitutes a cloud upon said plaintiff's title to said real estate."

It was further found that the west half of said southwest quarter of said section twenty-eight is, and since the original survey thereof by the United States has been, thirty-nine and forty hundredths chains north and south on each of the sides thereof, twenty and ninety hundredths chains wide east and west across the south end thereof, and twenty and seventy-seven hundredths chains wide across the north end thereof, and that it contains eighty-two and nine hundredths acres of land; that the tract of sixty acres off of the south end thereof is bounded on the north by a line parallel

with the south line of said west half and distant therefrom twenty-eight and eighty hundredths chains, the true north line of the lands owned by the appellant off of the south end of said west half being the line above described; that the real estate described in the second paragraph of the complaint is the strip of land one and twenty hundredths chains in width north and south and twenty and seventy-seven hundredths chains in length east and west, lying immediately north of and bordering upon said true north line of the appellant's land; that the appellee, by virtue of the deed so executed to him by Wrigley, is the owner in fee simple of said real estate described in the second paragraph of the complaint; that the appellant is in possession thereof without right and unlawfully deprives the appellee of the possession thereof; that in the year 1887 said Magers proposed to the appellee that they build a partition fence across said west half of the southwest quarter of said section twenty-eight, to divide the lands of Magers from the lands of appellee's wife; that the appellee desired, and so stated to Magers, that a survey be had by a surveyor, to locate the north line of the lands of Magers, but he desired that such survey be deferred until some time in the future; that it was agreed between the appellee and Magers that such fence should be built, and that at some future time a survey should be had, and that said fence should then be moved to the line established by such survey, if such line should be at a different place from that of the fence as originally built; that Magers then claimed that his lands extended thirty chains (one hundred twenty rods) north from the south line of said west half, and he built the west half of said partition fence upon a line one hundred twenty rods north from the south line of said west half; that Magers then knew that if the north line of his lands should be established one hundred twenty rods north of said south line of the west half he would get more land

than he had purchased from Harrison; that appellee was ignorant of this fact when said arrangement was made, and when said fence was built did not know the dimensions of said west half, or either of them, and did not then know the location of the true north line of Magers; that a short time after the west half of said partition fence was built appellee erected the east half thereof upon a line one hundred twenty rods north of the south line of said west half; that said fence has since remained on said line, and Magers and his successors in title have since held possession up to said fence; that Josephine Dumbeck made no arrangement whatever with Magers with regard to the erection of the fence, or with regard to the north line of his lands; that the evidence fails to show that the appellee was representing or had any authority to represent said Josephine in what was done with respect to the fence and the erection thereof, and fails to show that she had any knowledge with regard to the matter.

The court stated as conclusions of law: (1) That the appellee was entitled to judgment against the appellant quieting the appellee's title to the real estate described in the first paragraph of the complaint; (2) that the appellee was entitled to judgment against the appellant for the possession of the real estate described in the second paragraph of the complaint; (3) that the appellee was entitled to judgment against the appellant for costs.

In its judgment the court described the land referred to in the first paragraph of the complaint as follows: The west half of the southwest quarter of section twenty-eight, in township thirty-three north, range eleven east, excepting sixty acres off of the south end thereof, all in Noble county, Indiana, and described the land referred to in the second paragraph of the complaint as follows: Commencing at a point on the west line of the west half of the southwest quarter of section twenty-eight, township thirty-three north,

range eleven east, thirty chains north of the southwest corner thereof; thence east to a point in the east line of said west half thirty chains north of the southeast corner thereof; thence south on said east line one and twenty hundredths chains; thence west to a point on said west line of said west half one and twenty hundredths chains south of the place of beginning; thence north on said west line to the place of beginning, "containing two and fifty hundredths acres of land, all in Noble county, Indiana."

The special findings are to be examined with the understanding that it was incumbent upon the appellee to seek recovery upon the strength of his own title, and not 1. to rely upon the weakness of that of the appellant; that the burden of proof was upon the appellee; that only facts and not mere evidence or conclusions of law can have influence in the statement of facts in a special finding; that, so far as there is any failure to state material facts, the party having the burden of proof must be treated as not having established such facts. Mere references to evidence, without stating it and without showing the facts established thereby, must be ignored.

Harrison being the owner of the entire west half of the southwest quarter of section twenty-eight, conveyed a portion thereof January 16, 1885, to Magers, the remote grantor of the appellant. Subsequently, June 6, 1885, Harrison executed his deed of conveyance to Josephine Dumbeck, and through this conveyance whatever title is in the appellee was derived, so far as is shown by the special findings. It could not effectually, as against the appellant, embrace any portion of the land previously conveyed by the duly recorded deed of the same grantor to Magers. In the conveyance to Magers the land was described, as shown by the special findings, as "sixty acres off of the south end of the west half of the southwest quarter of section twenty-eight, township thirty-three north, range eleven east, more

particularly described as follows, to wit: Commencing at the southwest corner of said west half of said southwest quarter; running thence north one hundred twenty rods; thence east eighty rods; thence south one hundred twenty rods; thence west eighty rods to the place of beginning."

When the descriptions in the deed of January 16, 1885, are applied to the land which the grantor owned, it is seen that there is a contradiction in the descriptions. They could not both be correct. And while the first description would be sufficiently definite if it stood alone in the deed, for the conveyance of land actually owned by the grantor, so also the second description would be sufficient, standing alone, to convey land then owned by the grantor. It was the intention, apparent on the face of the deeds, to describe the same land by both descriptions. The case is not one of a consistent and apparently certain and definite description found upon seeking to apply it to the subject-matter to be equally applicable to two different objects, but it is one of two descriptions which upon application to the subject-matter are contradictory descriptions, the first being of land of certain and definite shape and quantity, the other of land of the same quantity but of another shape, each of the descriptions including some land omitted from the other. It is true, as contended by the appellant, that it is a rule of construction that words of particular description will control more general terms of description where both cannot stand together. But this rule, as we consider, cannot suffice to solve the difficulties of the case at bar.

The first description in this deed, if it may indeed properly be called general, is a complete and perfect description, as definite as if the description expressly set forth the metes and bounds. It cannot be said to be less certain or less definite than the second description. See *Maguire* v. *Bissell* (1889), 119 Ind. 345; *Mitch-*

*ell* v. *Brawley* (1895), 140 Ind. 216.   In *Barney* v. *Miller* (1865), 18 Iowa 460, 466, a rule of construction is thus stated: "Where a deed of conveyance contains a general description of the property conveyed, which is definite and certain in itself, and is followed by a particular description also, such particular description will not limit or restrict the grant which is clear and unambiguous by the general description.   *   *   *   Where the general description is indefinite and uncertain, and reference to the particular description must be had, in order to ascertain with certainty the subject of the grant, in such cases, the rule does not apply.   But, then, the whole language will be taken together, and though it may be ambiguous or even contradictory, if, upon the whole instrument, there is sufficient to manifest the intention of the parties with reasonable certainty, that will suffice."   Where the general description in a deed of conveyance purports to be "of all or the whole of any property described, any additional description, apparently designed to apply to the same property, but which proved to be only partially true, will not be construed to restrict the grant to a portion of the property, but all will pass.   It would be otherwise, where the additional expressions upon their face purport to be qualifications or limitations of a preceding general description."   *Drew* v. *Drew* (1854), 28 N. H. 489, 513.   See, also, *Stevens* v. *Johnson* (1875), 55 N. H. 405, 409.   In *Abbott* v. *Pike* (1851), 33 Me. 204, it was said:   "Particular recitals, when used merely as descriptive of the grant, do not limit or restrict it, when the general language of the conveyance is intelligible and effective, without recitals.   So, a true and certain description of the grant is never invalidated by the addition of a falsity, when the intention of the parties can be subserved, and the conveyance upheld, by sustaining the true and rejecting the false description."   In *College Corner, etc., Road Co.* v. *Moss* (1883), 92 Ind. 119, 129, it was said: "In a complaint to recover possession of land, as in

a deed of conveyance, words of particular description control more general terms. *Inge* v. *Garrett* [1871], 38 Ind. 96; *Gano* v. *Aldridge* [1866], 27 Ind. 294. A description may be controlled by a further description; the addition of a particular circumstance to a general description will operate as a restriction. But a general description, which is definite and certain, cannot be restricted."

If it be sought to apply the rule that where there are in a deed two descriptions of the land conveyed, and they do not coincide, the grantee is at liberty to elect that which is most favorable to him, it does not appear that the appellant ever made an election with reference to the difference in the descriptions in his deed from Harrison, or that he ever took possession with reference to one description to the exclusion of the other, or that the second description was more favorable to him than the first description.

Where the description contained in a deed of conveyance, after applying settled rules of construction, remains so vague, obscure or conflicting as to leave the intent of the parties uncertain, the declarations and acts of the parties may be shown by parol. *Harris* v. *Oakley* (1891), 130 N. Y. 1, 28 N. E. 530.

In the case before us it was not error for the court to admit evidence of the extrinsic facts shown in the finding and to take such facts into consideration, having reference in so doing, so far as all the circumstances made it reasonable, to the order in which the two descriptions occur in the deed, and having regard to the peculiar situation in which the grantor would be left as to the portion of his tract not conveyed to Magers, and thus arriving at the intention of the parties which, so far as not inconsistent with language used in the deed, must control. It was necessary, if the conveyance were upheld, to reject one description, and though the extrinsic facts shown tended to contradict one description, they enabled the court

more certainly to arrive at the intention, and thus to uphold the true description by rejecting the false, and therefore they did not vary or contradict the written contract.

In the deed of June 6, 1885, the land was described as "twenty acres off of the north end of the west half of the southwest quarter of section twenty-eight, township thirty-three north, range eleven east, being eighty rods east and west and forty rods north and south, containing twenty acres of land, more or less, being all of said west half not sold to John P. Magers." Here in the beginning is a description sufficiently certain to designate a definite tract of land, and good, standing alone, for the conveyance of as much of such definite tract of twenty acres as the grantor might then own. When applied to the land then owned by him, it appears that the next words of description, stating its length and breadth, without reference to any particular points, are not true, and they must be rejected as a false description. There is nothing materially modifying the first description until we reach the reference to the former conveyance to Magers. When that is taken into consideration we see that in this deed also are two descriptions materially contradicting each other; both intended to designate the same land, and each sufficiently certain and definite to designate particular land owned by the grantor, but the last including more land than the first. If the deed is to be available in behalf of the grantee, both of these descriptions cannot stand, but one of them must be rejected as not sufficiently indicating the intention of the parties.

In Kellogg v. McFlatter (1904), 111 La. Ann. 1038, 36 South. 112, the owner of the north half of a certain section made a conveyance to A. E. Minor of "one hundred acres off the east portion of the north half of" said section, which was surveyed, and possession was taken by the grantee. Afterward the same grantor conveyed to E. D. Minor "eighty acres off the west portion of the

north half of" said section, the line to be afterwards surveyed so as to join the one hundred acres sold to A. E. Minor. It was said by the court that there could be no question as to what property was sold to A. E. Minor, and that it was clear that the property sold to E. D. Minor was a strip of eighty acres of land immediately to the west of and adjoining the one hundred acres sold to A. E. Minor. "That language," it was said, "is clear and unambiguous, and is the controlling call in the title."

In *Wuesthoff* v. *Seymour* (1871), 22 N. J. Eq. 66, a conveyance of real estate described it by metes and bounds, with the addition, "being the same premises conveyed to" this grantor by a deed identified. The metes and bounds did not include a small strip which was included in the description in the deed to which reference was thus made. It was held that the deed so referred to controlled, this being the evident intention of the parties. It was said: "The two descriptions of this property thus given in this deed do not agree. And the question is, which of the two must be taken. Each description is certain, definite and complete, if it stood alone. There is a latent ambiguity, which does not appear on the face of the deed, but by extrinsic facts which show that these two descriptions differ. This ambiguity, like other latent ambiguities, can be solved by ascertaining the intention of the parties from the situation of the property." In *Coogan* v. *Burling Mills* (1878), 124 Mass. 390, 393, it was said to be a settled rule that, although a reference to a recorded deed may not always be construed to exclude a parcel already described by metes and bounds, yet such reference must convey additional land described in the deed referred to, unless otherwise controlled. *Boone* v. *Clark* (1889), 129 Ill. 466, 21 N. E. 850, 5 L. R. A. 276, was a case where the owner of a tract of land had conveyed to Judd for a right of way for a railroad company a strip of land "one hundred fifty feet wide, being seventy-five

feet on each side of" a line described, and Judd conveyed to the railroad company a strip of land "one hundred feet in width, being fifty feet on each side of" the same line, and added, "hereby intending to convey all the interest vested in said party of the first part by conveyance executed by the following named parties," among them being his grantors. It was held that the latter deed conveyed a strip one hundred fifty feet wide. It was held that, by reference to the former deed, land additional to that included in the preceding particular description was conveyed, citing, with other cases, *Coogan* v. *Burling Mills, supra,* and *Wuesthoff* v. *Seymour, supra.*

If the description in a deed of conveyance remains doubtful, its language must be taken as the language of the grantor, and all doubts must be solved against him and in favor of the grantee. *Piper* v. *True* (1869), 36 Cal. 606.

Harrison, in view of the extrinsic facts stated in the finding, which must be regarded as admissible in evidence in such a case, and of the rule which ascribes the form of the description to him and holds him bound to the largest extent that its strongest terms in favor of the grantee will admit, must be considered as having by this deed conveyed to Josephine Dumbeck all that portion of the half of the quarter section lying north of the tract of sixty acres off of the south end thereof.

The rights of the appellee were not adversely affected by the facts stated concerning the fence constructed by Magers and the appellee without any concurrence or knowledge on the part of appellee's wife, then the owner, as to which there was no sufficient agreement that it should be a permanent boundary line, the circumstances indicating an intention to the contrary on the part of the persons who built it. See *Mitchell* v. *Brawley* (1895), 140 Ind. 216.

A motion of the appellant for a new trial was overruled. We have already stated our opinion that there was no available error in admitting parol evidence of extrinsic facts tending to show the intention of the parties to these deeds of Harrison, not contradictory to the written contracts, though tending to show that one of two conflicting descriptions was the true description of the land conveyed.

Objection was made to the admission in evidence of the record in the recorder's office of Noble county, where the land was situated, of the deed of Harrison and his wife to Josephine Dumbeck, dated June 6, 1885, and recorded June 18, 1885. The deed was acknowledged before Cyrus B. Tulley, a justice of the peace of Whitley county, as shown by his certificate, and this acknowledgment was authenticated by the certificate of James M. Harrison as clerk of the Whitley Circuit Court, with the seal of that court. It was shown in evidence that this James M. Harrison, who was clerk, was the James M. Harrison who was grantor in the deed. Whatever insufficiency there would have been in this record as evidence was obviated by the curative statute of March 7, 1891 (Acts 1891, p. 336. See, also, *Steeple* v. *Downing* (1878), 60 Ind. 478, 495; *Cole* v. *Wright* (1880), 70 Ind. 179, 190. This evidence was not objectionable as tending to deprive appellant of a vested right, as suggested on his behalf in argument. His right extended to the land conveyed to Magers by Harrison. The evidence tended to show title in the appellee to land, no part of which was included in the conveyance to Magers, appellant's remote grantor. It was not offered or admitted for the purpose of cutting down the grant to Magers and through him to the appellant, which was fixed by the deed to Magers and accompanying circumstances, and not affected by any subsequent conveyance of Harrison to another grantee.

The appellant introduced in evidence the record of a quitclaim deed (not mentioned in the special findings) dated April 29, 1897, from Harrison and his wife to John Dumbeck, the appellee, for the conveyance of land in Noble county, Indiana, described therein as "a small part of the west half of the southwest quarter of" said section twenty-eight, "described as follows: Commencing at the southeast corner of said west half and running thence north on the east line thereof one hundred twenty rods; thence west fifty-one feet; thence south, parallel to the west line of said west half, to the south line thereof; and thence east on said south line sixty feet, to the place of beginning, containing two and fifty-two hundredths acres, be the same more or less." It is stated in a bill of exceptions that this evidence was introduced by the appellant for the purpose of showing that by the act of the appellee in procuring this deed he was estopped to claim that the strip of land described in this deed was a part of the sixty acres deeded by Harrison and wife to Magers, and was estopped to claim that this strip comprised any part of the sixty acres now alleged to be owned by appellant under his deed as remote grantee of Magers. It is further stated in the bill of exceptions that the court, in making its special findings, refused to find for the appellant on his claim and defense of estoppel, but found in favor of the appellee, and that the appellant excepted and reserved the question of law.

Without regard to the question as to whether there is any technical objection to the manner of presenting the matter, we are of the opinion that there was no available error in the refusal of the court to regard this evidence as establishing an estoppel as suggested. Neither party was making any claim of title under this deed; and if their titles were fixed and determined, as we have held, by the deeds of prior date, they could not be affected favorably or adversley by the deed of 1897 for property not then owned by the grantor. If the appellee saw fit, through

caution afterward found unnecessary, to procure a useless and ineffectual deed of conveyance, he could not thereby be estopped to assert his rights under prior conveyance against one not a party to the useless deed whose conduct was not affected thereby.

Judgment affirmed.