Opdyke *v.* Stephens.

---

JOHN L. OPDYKE *vs.* ARCHER STEPHENS.

1. If land is described in a deed by courses and distances and fixed monu-
ments, the latter control the former; but if no monuments are mentioned in
the deed, then the courses and distances will control.

2. In a case where a boundry line is in dispute, and the land is described in the deed by courses and distances, and no fixed monuments or corners are mentioned in the description, the question whether the courses and distances carry the lines to certain points claimed by a party in the cause, is not a question of construction, but of boundary or location, and is not a question of law for the court to decide, but a question of fact for the determination of a jury upon the evidence before them.

3. The correspondence between the courses and distances in a deed to a party in a suit, and under which he claims title, and those in a prior deed for the same land and land adjoining, together with a map endorsed by a former owner of the same land on his deed, is evidence to be considered by the jury in determining the boundaries of the land in dispute.

4. In settling a question of boundary, when there is a latent ambiguity in the description contained in the deed, or a doubt as to the true location of the lines, evidence *aliunde* is admissible to show where the lines are. Boundaries may be proved by every kind of evidence admissible to establish any other fact.

5. The question of construction is a question of law to be decided by the court upon the terms of the instrument itself, and where no latent ambiguity exists, it must be decided without evidence *aliunde ;* but a question of location or the application of the grant to its proper subject matter, is a question of fact to be determined by the jury by the aid of extrinsic evidence.

Argued before the CHIEF JUSTICE and Justices VREDENBURGH, VAN DYKE, and WHELPLEY.

*Vannatta* and *Bradley*, for plaintiff in error.

*Mills* and *Miller*, for defendant.

The opinion of the court was delivered by the

CHIEF JUSTICE. Error to the Morris circuit. Stephens, the defendant in error, brought an action of replevin in the Morris circuit for a lot of timber, and recovered judgment. To reverse that judgment the defendant below has brought this writ of error. On the trial, to prove property in the timber, the plaintiff relied upon his title to the land where the timber was cut. The precise point in controversy involved the true location of the north lines of the plaintiff's tract. If those lines are located according to the claim of the plaintiff, the timber was cut

upon his land. If located according to the construction of the defendant, the timber was not cut upon the plaintiff's land. The errors assigned are based upon an exception to the charge of the court. They relate—1st, to the instruction given to the jury; 2d, to instructions asked for by the defendant below, and denied by the court.

The first error assigned is, that the instruction given was erroneous, as the charge contained in the bill of exceptions is variant from that set forth in the assignment of errors. In speaking of its terms, reference will be made exclusively to the former. The judge charged the jury, that " in construing the deed to the plaintiff, fixed and known monuments called for in the deed must control courses and distances, and that when the deed called for no monument the plaintiff was entitled to go to such points as the courses and distances called for in said deed would take him to; that the course between the lands of the plaintiff and the lands of Quick and Hoagland, on the east bank of the Musconetcong river, in the line of the sixth course given in the description of the second lot described in said deed, seemed to be a clearly asertained, well known, and undisputed corner or monument; that crossing the said river on the said sixth course, and running from the said corner or monument two chains, the plaintiff was entitled, by said deed, to go from the end of said two chains up said river the distance of 46 chains, because the ash tree called for in said deed cannot be found, and the place where it stood is unknown; that from the end of the said forty-six chains, the plaintiff was entitled, according to said deed, to go north, 53 degrees east, 15 chains, to a white-oak; thence north, 43 degrees east, 14 chains and 50 links, and thence north, 40 degrees west, five chains." The only legal principle contained in this instruction is, that in construing a deed, if there is nothing in the description to control the call for course and distance, the land must be bounded by the courses and distances called

for; but that the call for courses and distances will be controlled by fixed and known monuments called for in the deed. The principle is so familiar as scarcely to require the citation of an authority in its support, though the cases are very numerous. *McIver's Lessee* v. *Walker*, 4 *Wheat.* 444; *Newsom* v. *Pryor's Lessee*, 7 *Wheat.* 7; *Chirnoweth* v. *The Lessee of Haskell*, 3 *Peters* 96; *Barclay* v. *Howell's Lessee*, 6 *Peters* 498; *McEowen* v. *Lewis*, 2 *Dutcher* 451.

The residue of the charge consists of a mere application of the principle to the terms of the deed under consideration, in connection with admitted or undisputed facts in the case. It does not seem to be seriously insisted that there is error, either in the statement of the principle or in its application, independently of other evidence in the cause.

The second error assigned is, that the judge refused to charge the jury as requested by the defendant's counsel; that in going from the termination of the lines of five chains, in said deed mentioned, the said Archer Stephens must go to and terminate the next line called for in said deed (to wit, the line of twenty-two chains and fifty links) at the northwest corner of the Samuel Pryor lot, now owned by Sylvanus Lawrence, and that the said Archer Stephens must begin his next line of north, fifty-one degrees east, seventy chains, at the said corner of the Samuel Pryor tract, and go from thence in a right line to the stone heap, corner to land sold to Amos Grandin.

The court were clearly right in refusing to charge as requested. The northwest corner of Samuel Pryor's lot is not a monument called for in the deed in question. The description in the plaintiff's deed, commencing at the end of the course of five chains, being the tenth course in the description, is as follows: "11. North, sixty-four degrees east, twenty-two chains and fifty links. 12. North, fifty-one degrees east, seventy chains, to a stone heap, corner to land sold to Amos Grandin." No

monument is called for at the end of the eleventh course. That line is to be run according to the call of the deed, merely by course and distance. The court is asked to instruct the jury that the line must be run, disregarding the call for course and distance, to a monument not called for, nor in any way recognised in the deed. Such instruction would have been subversive of the well settled rule of interpretation above referred to. Assuming that the defendant may show by evidence *aliunde* that the eleventh course in the plaintiff's deed was intended to terminate at Samuel Pryor's northwest corner, the court is not to assume that the fact is established, and instruct the jury accordingly. It is a question not of construction, but of boundary or location—not a question of law for the court to decide, but a question of fact for the determination of the jury upon the evidence before them.

The third error assigned is, that the judge refused to instruct the jury, as requested by the counsel of the defendant, that the correspondence between the courses and distances mentioned in the deed to the plaintiff, and the courses and distances given in the prior deeds for the same land now claimed by the plaintiff, and the land adjoining thereto, together with the map and memorandum endorsed by Daniel Smith on the deed made to him by the trustees of Thomas Pryor, dated 20th July, 1776, were evidence to be considered by the jury in determining what were the boundaries of the lot secondly described in the deed from George R. Smith to the plaintiff; and that if, from that and the other evidence in the cause, the jury were satisfied it was the intention of the said George R. Smith, in and by the said last mentioned deed, to terminate the said line of twenty-two chains and fifty links at the northwest corner of the Samuel Pryor lot, and from that corner to begin the next course of north, fifty-one degrees east, seventy chains, to a stone heap, corner to land sold to Amos Grandin, then their verdict should be for the defendant.

So much of the instruction asked for as declares that the correspondence between the courses and distances in the plaintiff's deed, and those in the Prior deed for the same land now claimed by the plaintiff and the adjoining lands, together with the map and memorandum endorsed by Daniel Smith upon his deed of the 20th of July, 1776, were evidence to be considered by the jury in determining the boundaries of the lot conveyed by George Smith, jun., to the plaintiff, was proper. If this had been the whole instruction asked, its denial would have been erroneous. The evidence was clearly competent and proper for the consideration of the jury. But the facts, including the map and memorandum, were before the jury, and it is not clear that the court intended to declare that they were not evidence, or to exclude them from the consider ation of the jury The request for this instruction was coupled with another, which joint request was designed to present, and does present the real question at issue. The court was not only requested to instruct the jury that the foregoing facts were competent evidence for their consideration, but also that if they believed from that and from the evidence in the cause the jury were satisfied that it was intended by that deed to terminate the line of twenty chains and fifty links at the northwest corner of the Pryor lot, and from that corner to run the next course to the corner of Grandin's land, their verdict should be for the defendant.

It may be objected to the latter part of this instruction, that it assumes as true what was a question of fact to be decided by the jury, *viz.* that if the lines were thus run the timber was not cut upon the plaintiff's land. But there seems to have been no question upon this point. I think the entire instruction asked for amounts to this, that if the jury believed from evidence *aliunde* that the eleventh course of the plaintiff's deed was intended to terminate at the corner of the Pryor lot, they should find that its termination was there, although it altered both the course

and distance called for in the deed.   And the refusal by
the court to give this instruction, taken in connection with
the instruction actually given, that the lines must be run
according to the course and distance called for in the deed,
was a virtual instruction to the jury, that in the location
of a survey, where there is no call for fixed monuments,
evidence cannot be given to control the courses and dis-
tances called for in the deed.   There are authorities to sus-
tain the position. *Hamilton's Lessee* v. *Cawood*, 3 *Har.
& McHen.* 437 ; *Dorsey* v. *Hammond*, 1 *Har. & J.* 201 ;
*Reid* v. *Schenck*, 2 *Dev.* 415.

But the rule is well settled that boundaries may be proved
by every kind of evidence that is admissible to establish
any other fact. *Smith* v. *Prewit*, 2 *A. K. Marshall* 159.

Actual occupation—ancient reputation—the admissions
of the party in possession against his interest—ancient
maps and draft—marked trees—the lines of adjoining
surveys, monuments erected at or soon after the date of
the grant of adjoining surveys, are all admissible for this
purpose, and are constantly resorted to to fix the boun-
daries, though it conflicts with the courses and distances
called for in the deed.   The well settled principle is,
that practical location is evidence of a mistake in the de-
scription.

The practice, as well as the reason upon which it rests, is
stated with admirable clearness and felicity by Mr. Justice
Washington, in *Conn et al.* v. *Penn et al.*, 1 *Peter's C. C.
R.* 511.   " No gentleman of the profession, who is at all
conversant with land trials, can be ignorant that the courses
and distances laid down in a survey, especially if it be
ancient, are never in practice considered as conclusive, but
that, on the contrary, they are liable to be materially
changed by oral proof or other evidence tending to prove
that the documentary lines are those not actually run.
How often have we known reputed boundaries proved by
the testimony of aged witnesses, and even by the hearsay
evidence of such witnesses, established in opposition to

II*

the most precise calls of an ancient patent. Such evidence has been constantly received, and distances have been lengthened or shortened without the slightest regard to the calls of the patent. The reason is obvious. It is not the lines reported, but the lines actually run by the surveyor, which vests in the patentee a title to the area included within these lines. The survey returned on the patent is the evidence of the former, natural marks or reputation is in almost all cases the evidence of the latter. The mistakes committed by surveyors and chainbearers, more particularly in an unsettled country and wilderness, have been so common, and are so generally acknowledged, as to have given rise to a principle of law as well settled as any which enters into the land titles of this country, which is, that when the mistake is shown by satisfactory proof, courts, of law, as well as of equity, have looked beyond the patent to correct it." The principle was in this instance applied to an original patent, but it is evident that it applies with equal force to all grants and conveyances in an unsettled country. *Makepeace* v. *Bancroft*, 12 *Mass.* 409 ; *Owen* v. *Bartholomew*, 9 *Pick.* 525 ; *Boardman* v. *Lessee of Reed*, 6 *Peters* 341 ; *Rockwell* v. *Adams*, 6 *Wend.* 467.

When there is a latent ambiguity in the description contained in the deed, all the cases agree that evidence alone is admissible. But it is not upon this principle *aliunde* that the evidence is received. It is admissible in all cases where there is a doubt as to the true location of the survey, or a question as to the application of the grant to its proper subject matter. It must be constantly borne in mind that it is not a question of construction but of location. A question of construction is a pure question of law, to be decided by the court upon the terms of the instrument itself, to the exclusion of evidence *aliunde*, where no latent ambiguity exists. A question of location, or the application of the grant to its proper subject matter, is a question of fact to be determined by the jury by the aid of extrinsic evidence. The uniform practice in this

state, it is believed, has been in accordance with these prin-
ciples, and the lack of judicial authority upon the point is
doubtless attributable to the fact that the question has long
been regarded as settled.

The question whether the eleventh course of the descrip-
tion of the second lot, contained in the deed from Smith
and wife to the plaintiff, did or did not terminate at the
corner of the Samuel Pryor lot, was a question of fact, to
be decided by the jury upon the whole evidence in the
cause. And inasmuch as the instruction denied by the court,
in connection with that actually given, seems necessarily to
exclude this fact from the consideration of the jury, I think
the judgment must be reversed, and a *venire de novo*
awarded.

I have had some difficulty in arriving at this conclusion,
not from any doubt as to the legal principles involved, but
from an apprehension that the matter of the instruction
given to the jury may have been misunderstood. We have
not the entire charge before us.   It appears, from the evi-
dence in the case, that the land in question originally con-
sisted of two contiguous tracts, one of which was conveyed
to Daniel Smith, jun., by deed dated in 1770, and the other
by a resurvey or location made by him in 1768. Both these
tracts were understood by him to be bounded on the north-
west by the line of a survey made to the London company
in 1738.   It seems equally clear, from a map and memor-
andum endorsed by him upon the deed of 1770, that he
understood that the line of the London company's survey
ran to the corner of Samuel Pryor's lot; that both his tracts
made an angle at that point, and that the angle made by the
ninth and tenth lines of the deed of 1770, was an interfer-
ence with the London company's survey. These two tracts
were subsequently conveyed, by the same description, to
George R. Smith, the grantor of the plaintiff.   In 1832,
Stephens, the plaintiff, purchased both the tracts, excepting
certain portions which had been previously conveyed. He
agreed to pay a stipulated price per acre for the land actu-

ally conveyed. A survey of the land was made, and a conveyance executed uniting the two tracts in one description, and including the gore included in the deed of 1770, which Daniel Smith supposed was an interference with the London company's survey. It is in evidence that the lands thus surveyed and conveyed included the land upon which the timber was cut. It is not shown that it does conflict with the survey of the London company or with any other ancient survey. No such pretence was made upon the trial. On the contrary, the defendant offered in defence a recent survey, made by himself, or those under whom he acted, of a gore of land being between the plaintiff's tract and the London company's survey, upon which he alleges the trespass was committed, but which was properly rejected as evidence. The case thus presented seems to be that the plaintiff has been in possession of a tract of land under an actual survey and conveyance, the lines of which include the tract where the timber in controversy was cut, for over twenty years. Did that not constitute in itself, in the absence of any evidence of an older conflicting survey, a good title, at least, as against a mere trespasser? Under this state of facts the propriety of the instruction given by the judge would present a very different question from that apparently presented by the simple instruction asked for and denied, and I cannot but feel that the reversal of the judgment may operate to deprive the plaintiff of a verdict which is strictly in accordance with law and evidence.

CITED in *Fuller* v. *Carr*, 4 *Vr.* 161; *Andrews* v. *Rue*, 5 *Vr.* 405; *Jackson* v. *Perrin*, 6 *Vr.* 143; *Conover* v. *Wardell*, 7 *C. E. Gr.* 502.