GUY MARVEL *vs.* ALBERT J. REGIENUS.

Worcester.    September 23, 1952. — November 6, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Real Property*, Boundary, Monument.    *Deed*, Construction.    *Words*, "Cleared land."

In a deed of a farm excepting a "sprout lot" whose south boundary was merely stated to be "by cleared land," there was no patent ambiguity in the term "cleared land" as descriptive of a monument marking the boundary, nor was there any latent ambiguity where the line of the "cleared land" as it had existed at the time the deed was given could be established on extrinsic evidence; and there was error in a conclusion that there was such ambiguity in the description of the boundary in the deed that the parties to the deed, by mutually blazing a different line many years after the deed was given, had established such different line as the boundary.

TORT. Writ in the Superior Court dated June 21, 1940. The action was heard by *Fairhurst*, J., upon an auditor's report.

*John F. Buckley*, for the defendant.

*Stanley G. Walker*, for the plaintiff, submitted a brief.

WILLIAMS, J. This is an action of tort to recover damages for cutting and carrying away wood from the plaintiff's land in Hardwick. G. L. (Ter. Ed.) c. 242, § 7. See *Davenport* v. *Haskell*, 293 Mass. 454; *Moskow* v. *Smith*, 318 Mass. 76. The case was referred to an auditor, whose findings of fact, by stipulation of the parties, were to be final. A judge of the Superior Court, on motion of the plaintiff, ordered judgment to be entered for him on the auditor's report. The case comes to us on the defendant's exceptions to the allowance of this motion, to the denial of the defendant's motion for judgment, and to the refusal to make certain rulings requested by the defendant.

The principal issue is whether the wood which was admittedly cut by the defendant was located on the plaintiff's land. The area of the cutting was formerly a part of a farm of approximately 150 acres conveyed in 1890 by Thomas H. Ingham and Fred H. Hawkins to Tuffield Lussier (sometimes spelled Lucier) by a deed in which the property was described by bounds, courses and distances. On October 2, 1905, Lussier conveyed this farm to his son Tuffield Lussier, Junior, by a deed containing the same description but "excepting and hereby reserving" to himself and his heirs "a sprout lot situate on the northerly part of the above described premises, and consisting of 40 acres more or less. Said sprout lot being bounded northerly by land of one Mitchell; easterly by land of one Spooner and westerly and southerly by *cleared land* [emphasis supplied] described in above conveyance." No further description of the cleared land appears in the deed. Tuffield Lussier died in 1930, and on November 15, 1944, the plaintiff purchased the above described sprout lot at an auction sale conducted by a commissioner appointed by the Probate Court. The deed from the commissioner to the plaintiff recited that the property conveyed was "A sprout lot situated in said Hardwick on the northerly part of premises described in deed from Thomas H. Ingham and Fred H.

Hawkins to Tuffield Lussier dated February 13, 1890, recorded with Worcester District Deeds in Book 1315, Page 479, consisting of forty (40) acres more or less, said sprout lot being bounded northerly by land formerly of one Mitchell, easterly by land formerly of one Spooner and westerly and southerly by cleared land described in deed above referred to."

Tuffield Lussier, Junior, died in 1940, and on June 20, 1944, his widow conveyed that part of the farm which had been owned by her husband consisting of about 100 acres to one Geoffroy. In 1946 Geoffroy conveyed the property to one Keyes. Later in the same year Keyes sold the timber rights on the land to the defendant who in 1947 proceeded to cut the wood with which we are now concerned believing that it stood on the land owned by Keyes. Whether the defendant trespassed on the plaintiff's land depends on the correct location of the boundary line between the land of Keyes on the south and the land of the plaintiff on the north.

In 1921 Odile, the wife of Tuffield Lussier, gave a deed of an undivided one-half interest in the sprout lot to their son John. Odile had no title to the property other than a dower interest and her deed was not a "valid conveyance." She died soon after and John, whose relation with his father and brother Tuffield was not cordial, seems to have made claim to the entire sprout lot. Tuffield Lussier, Junior, wished to establish the northerly line of his farm where it bordered on his father's sprout lot, and he and his father marked a line "from the corner of the Spooner land southerly and westerly to the land of Mitchell" by blazes on trees which were thereafter recut by the Lussiers from year to year. The lands of Spooner and Mitchell were the easterly and northerly bounds of the sprout lot referred to in the 1905 deed. It is this blazed line which the defendant contends is the true northerly boundary line of the Keyes property and the southerly and westerly boundary line of the plaintiff's land. The defendant cut wood as far north as this line but not beyond. In 1947 the plaintiff had two fence viewers of the town of Hardwick run a line along what

they believed was the northerly border of the cleared land of the farm as it appeared in 1905. They marked the line with large headed nails driven in the stumps of trees. This line is a substantial distance south of the blazed line and the plaintiff contends that it is the correct southerly and westerly boundary line of his property. It is the title to the land between these two marked lines which is in dispute.

The auditor reports that in the hearing before him there "was considerable evidence introduced, some of it conflicting, about the amount of timber on the farm, its location, and the general topography of the area." He walked the fence viewers' line with the parties, their attorneys, and one of the fence viewers. He found that the northerly and easterly bounds of the plaintiff's land are marked by stone walls and have never been questioned. He found the southerly and westerly bounds of the plaintiff's land and in his report described the line marking these bounds in precise terms intelligible to the parties but which it is unnecessary for us to recite. So far as we can judge from the record the line found by the auditor follows substantially the line marked by the fence viewers. The defendant cut timber north of this line to the value of $730. The auditor ruled that in his opinion the use of the term "cleared land" in the deed from Lussier to Lussier, Junior, was so ambiguous "that they [the Lussiers] were warranted in establishing a definite line between their respective properties and that when they did so that line became the boundary line." He found that this line was regarded by both Lussier and Lussier, Junior, and the latter's successors in title as the boundary. No improvements were placed on the area between the line found by the auditor and the blazed line, except that Geoffroy, when he owned the farm, posted it with "No Trespassing and Hunting" signs.

The auditor concludes his report by stating, "If my conclusion of law is correct then I find for the defendant. If, however, my conclusion of law is erroneous, then I find for the plaintiff" in the sum of $730.

We think that the description of the disputed southerly and westerly boundary of the sprout lot contained in the excepting clause of the deed from Lussier to Lussier, Junior, was not patently ambiguous. It is evident that Lussier intended to except from the farm conveyed to his son the land north and east of the cleared land of the farm. This northerly section of the farm is found by the auditor to be heavily wooded. The words "cleared land" are sufficient to describe a monument (see *Temple* v. *Benson,* 213 Mass. 128, 132), and must be taken to refer to the condition of the land at the time the deed was given, that is, in 1905. *Coogan* v. *Burling Mills,* 124 Mass. 390, 394. The expression is commonly used to describe land which has been cleared of timber for purposes of pasture or tillage. See *Harper* v. *Pound,* 10 Ind. 32; *Seavey* v. *Shurick,* 110 Ind. 494. It is no more indefinite when used to describe a boundary than the words "by land improved by Gridley Putney" which phrase was held in *Bond* v. *Fay,* 12 Allen, 86, 88–89, to be unambiguous. See *Olson* v. *Keith,* 162 Mass. 485. The location and identity of a monument may be established on the ground by extrinsic evidence. *Temple* v. *Benson,* 213 Mass. 128, 132. If it can be so established there is no latent ambiguity in the description. It does not appear in the instant case that the line of the cleared land as it existed in 1905 could not be found (see *Morse* v. *Rogers,* 118 Mass. 572, 578) because the auditor has been able to find it. There is nothing in his report which convinces us that he did not have sufficient evidence to warrant his finding.

It does not appear that the blazed line marks the boundary described in the deed. It was not a line established by the parties at or about the time of the deed to identify and make certain on the ground the monuments described in the deed. See *Hooten* v. *Comerford,* 152 Mass. 591, 593; *Beckman* v. *Davidson,* 162 Mass. 347, and cases therein cited. The deed was given in 1905, the blazed line marked in about 1921. The line represents only an adjustment of possibly conflicting claims. It is settled that no title to land will pass by parol agreement unless followed by occupation according to

the line adopted, which occupation must be adverse and under a claim of right for twenty years. *Gray* v. *Kelley*, 190 Mass. 184, 187. *Crawford* v. *Roloson*, 256 Mass. 331, 336. There is no finding of such adverse use in the present case or findings of subsidiary facts on which adverse possession can be predicated. It appears that the area in question is wild land and the only evidence of use made of it by Lussier, Junior, and his successors in title was the maintenance of signs by Geoffroy about 1944. We think that the auditor's conclusion of law was erroneous and that his finding for the plaintiff must stand. We need not pass upon the requests for rulings. *Howland* v. *Stowe*, 290 Mass. 142, 145–146.

*Exceptions overruled.*