57 N.J. Super. 452 (1959)
155 A.2d 15
HAROLD W. SCHROEDER, PLAINTIFF-APPELLANT,
v.
ROBERT W. ENGROFF AND ADELAIDE L. ENGROFF, HIS WIFE, DEFENDANTS AND THIRD PARTY PLAINTIFFS-RESPONDENTS, AND ROLAND HOSICK AND LILLIAN HOSICK, HIS WIFE, THIRD PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1959.
Decided October 22, 1959.
*455 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Harold W. Schroeder argued the cause for appellant, pro se.
Mr. Ernest F. Keer, Jr., argued the cause for respondents Engroff (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff filed a suit for possession of certain lands situate in Rockaway Township, Morris County. Defendants Engroff, in addition to denying plaintiff's right to possession, filed a counterclaim seeking to quiet title to the lands involved. The Engroffs joined the Hosicks, their grantors of the lands to which title is disputed, as defendants in a third-party action. They sought to recover from the Hosicks upon a breach of warranty under their deed in the event that plaintiff succeeded in his primary suit.
The matter proceeded to trial without a jury. At the trial objection was made by defendants to the introduction of certain extrinsic evidence concerning the original location of an iron pipe referred to in the second course of the deed by which title to the lands became vested in one of Engroff's predecessors in title. The trial court permitted the taking of the testimony so proffered but reserved the right to rule thereon at the conclusion of the trial. In its conclusions the trial court determined that the testimony to which objection had been so made was inadmissible and that the case was therefore barren of proof of the existence of a monument. However, the trial court also concluded that since there was no reported case in this jurisdiction in *456 which the precise evidential question had received judicial treatment, he would treat of the matter as if the testimony alluded to had been admissible. He thereupon found that the plaintiff had failed to carry the requisite burden of establishing the location of the iron pipe. Judgment was entered for both the Engroffs and the Hosicks. From this judgment plaintiff appeals upon the grounds that the trial judge erred (1) in excluding the above testimony and (2) in concluding that, in any event, plaintiff had not borne the requisite burden of proof.
On July 13, 1933 William R. Jelliffe and wife, then being the owners of a tract of some 76 acres of land in Rockaway Township, conveyed the following portion thereof to Ernest Merrill:
"Beginning at a pipe in the road from Meriden to Lyonsville, where the property conveyed adjoins that of George Lyon; thence in a northwesterly direction along the line of an old stone wall three hundred and fifty feet (350'); thence in a southwesterly direction three hundred and twenty-five feet (325') to an iron stake; thence in a southeasterly direction parallel to the old line three hundred and fifty feet (350'); thence along the road from Meriden to Lyonsville three hundred and twenty-five feet (325'), more or less, to the original point or place of beginning."
This conveyance will hereafter be referred to as the Merrill deed. Merrill thereafter conveyed the lands by an identical description to Roland and Lillian Hosick. The Hosicks conveyed what purported to be the identical premises to defendants Engroff by deed dated April 3, 1956. The description contained in the latter deed is as follows:
"Beginning at the beginning corner mentioned in the deed from Ernest Merrill and wife to Roland Hosick and wife, dated December 1, 1953 and recorded in the Morris County Clerk's Office in Book F-55 of Deeds on pages 344 &c., for said County, and from said beginning running thence (1) North 20 degrees 44 minutes west to the second corner of the fourth parcel containing 2.20 acres more or less mentioned in the deed from Mountain Farms Company to William R. Jelliffe, dated April 3, 1922 and recorded in the Morris County Clerk's Office in Book R-27 of Deeds on pages 191 &c., for said County, continuing on the same course north 20 degrees 44 minutes *457 west a total distance of 216.12 feet to the beginning corner of the above mentioned 2.20 acre more or less tract, said point being also the beginning corner of the Third Parcel containing 10.58 acres more or less mentioned in the deed from Mountain Farms Company to William R. Jelliffe dated April 3, 1922 and recorded in the Morris County Clerk's Office in Book R-27 of Deeds on pages 191 &c., for said County, said point being also a corner common to lands now or formerly Peter W. Shaw and Watson Lawrence; thence (2) along the third course of the said 10.58 acre more or less tract reversed and along the line of the above mentioned now or formerly Peter W. Shaw north 37 degrees 26 minutes west 133.88 feet, said point being the second corner mentioned in the deed from Merrill to Hosick referred to above; thence (3) south 68 degrees 05 minutes west 325 feet to the third corner of the above mentioned deed from Merrill to Hosick; thence (4) south 28 degrees 12 minutes east 350 feet to the fourth corner in said deed, being a point in the Meriden-Lyonsville road; thence (5) still along said road north 78 degrees 16 minutes east 167.13 feet; thence (6) still along said road north 63 degrees 31 minutes east 66.93 feet; thence (7) still along said road north 50 degrees 48 minutes east 90.84 feet to the point or place of beginning. Being the same land and premises mentioned in the deed from Merrill to Hosick referred to above. Being a part of the Third Parcel containing 10.58 acres more or less and a part of the Fourth Parcel containing 2.20 acres more or less said two parcels being described in the deed from Mountain Farms Company to William R. Jelliffe dated April 3, 1922 and recorded in the Morris County Clerk's Office in Book R-27 of Deeds on pages 191 &c."
On June 20, 1955 Margaret Moody and Hamden C. Moody and Minnie Maier and Joseph Maier, having theretofore acquired title to the balance of the lands owned by Jelliffe, conveyed the same to plaintiff.

I.
We are first confronted with the question of the admissibility of the testimony which concerned the location of the iron pipe.
The question of the construction of a deed where the terms are unambiguous is one for the court, but where there is a latent ambiguity, evidence aliunde is admissible and the question of location of a grant to its proper subject matter is a question to be determined by a jury by the aid of extrinsic evidence. Hofer v. Carino, 4 N.J. 244 (1950); *458 Opdyke v. Stephens, 28 N.J.L. 83 (Sup. Ct. 1859). See also, 9 Wigmore on Evidence (3d ed. 1940), § 2472, p. 233.
Boundaries may be proved by every kind of evidence admissible to establish any other fact. Yard v. Ocean Beach Ass'n, 49 N.J. Eq. 306 (E. & A. 1892); Opdyke v. Stephens, supra.
Locations of monuments are evidential factual questions which may be proved in a boundary dispute as any other factual issue. Holmes v. Barrett, 269 Mass. 497, 169 N.E. 509 (Sup. Jud. Ct. 1930).
In the matter sub judice, although the description in the deed is clear and unambiguous, there does exist a latent ambiguity, since the distance of the second course to the alleged location of the monument (the iron pipe as located by plaintiff's witnesses) referred to in the conveyance, and the third course from the said iron pipe to the Meriden-Lyonsville Road are not of the length prescribed in the conveyance. The problem is not one of the construction of the deed but rather of location of the lands described. Evidence concerning the location of the iron pipe is therefore admissible.

II.
We proceed to a consideration of the case on its merits.
The pipe was admittedly not in existence at the time of the Hosick-Engroff conveyance.
Merrill testified: His father and Dr. Jelliffe had been intimate friends for some years prior to 1933. In that year Dr. Jelliffe, having been apprised of the fact that Merrill had a desire to acquire title to a small parcel of land, agreed to convey to him the southeast corner of the larger tract then owned by Dr. Jelliffe. The land was at that time vacant and unimproved. Dr. Jelliffe and Merrill went to the locality and walked over a portion of the land intended to be conveyed to Merrill. Merrill stated to Dr. Jelliffe that he was concerned about the water supply and was desirous of obtaining title to a spring located in the general *459 vicinity of the land to be conveyed. The two proceeded to the spring. They then determined upon the location of one corner of the property some 10 feet beyond the spring. Several weeks thereafter they placed an iron pipe at that point. At no time did they obtain a survey, actually measure the distances of the various courses, or even pace off the distances of said courses. They determined the boundaries, as Merrill stated, "by eye" and not by any actual measurements. The underbrush at that time was too thick to permit of a pacing of the courses. The deed was thereupon prepared by the parties without benefit of counsel or of a surveyor.
Plaintiff, who has resided in the locality since prior to 1933, and who had rented the balance of the Jelliffe tract in 1935, substantiated Merrill in his location of the iron pipe and testified that he had seen it in that year, shortly after it had been installed. He recalled the presence of the pipe in that position as recently as 1940-1945 but had no recollection of when he had last seen it.
It is to be noted that the Hosicks were not called to testify as to the existence or non-existence of the iron pipe at the time of the conveyance to them and prior to their bulldozing the tract. This failure quite naturally leads to the mental inquiry as to the cause of their failure to testify and raised a query as to whether their testimony would not have been that the iron pipe was, at the time of their acquisition of title, at the spot designated by Merrill and Jelliffe. Credence is thus lent to the testimony of Merrill and plaintiff.
In his conclusion that this testimony, even if admissible, was of insufficient weight to support the burden cast upon the plaintiff, the trial court said:
"I have no reason to question the good faith of either Merrill or Schroeder, although as to the latter, his self interest is a factor which may not be overlooked. But granting to each full faith in his veracity, I am still confronted with the problem of the reliability of human recollection in the circumstances. These circumstances include *460 the fact that Merrill, unaided by anything except his memory, described what he saw on the ground twenty-five years ago. They include the fact that in the casual manner in which Jelliffe and Merrill dealt, the precise location of the monument then was of minor importance to the parties. They include also the fact that the property has passed through the hands of three sets of parties by warranted conveyances in reliance upon the accuracy of the descriptions contained therein.
The integrity of land titles and of instruments of record has always received the zealous protection of the courts, and properly so. I think I would fall short of furnishing this protection if I should rely upon so frail a thing as human memory of an event which happened 25 years ago to upend the record title. I therefore find as a fact that the proffered testimony is of insufficient weight to support the burden cast upon the plaintiff by the law."
Schroeder v. Engroff, 52 N.J. Super. 88, 93 (Super. Ct. Law Div. 1958).
We find ourselves constrained to disagree with the holding of the trial judge that plaintiff did not bear the burden cast upon him of locating, with reasonable certainty, the iron pipe referred to as a monument in the second course. The trial judge did not question the good faith or veracity of either Merrill or Jelliffe in their testimony concerning the original location of the pipe, but based his rejection thereof upon the untrustworthiness of an accurate recollection after the passage of 25 years. Basically, the trial judge concluded that human memory of what had transpired 25 years earlier was a frail reed upon which to lean to prove the location of the iron pipe. It is to be remembered that Schroeder testified that as late as 1945 the pipe had been in existence in the position in which he located it and that some time after the acquisition of title by the Hosicks the tract had been bulldozed. Neither plaintiff nor Merrill were shaken on cross-examination. The Engroffs did not proffer any contradictory testimony.
We do not agree that the testimony of plaintiff and Merrill is unbelievable. Contrawise, this was the first real estate transaction which Merrill had and it is a reasonable conclusion that it must have made a great and lasting impression on him. The pipe was near the source of the *461 water so important to him  the spring. Plaintiff had a very natural and real concern with the location of the pipe, since he and Dr. Jelliffe had a reciprocal "first refusal" agreement concerning their entire respective properties. Plaintiff subsequently approved the Merrill conveyance as not affecting his over-all agreement with Dr. Jelliffe. He was clearly interested in the exact location of the plot conveyed to Merrill.
Although the appellate court gives great weight to the factual findings of the trial court, having in mind the trial judge's superior opportunity to judge of the credibility of the witnesses because he has the opportunity to hear the spoken word and observe the conduct of the witnesses on the stand, the appellate court has the full power to make its own findings, giving due regard to that opportunity of the trial judge, and the verdict may be set aside, inter alia, for mistake. R.R. 1:5-3(a); 2:5; Sun Dial Corp. v. Rideout, 16 N.J. 252 (1954). Such an independent appraisal of the testimony, especially in the light of the trial court's findings of the credibility of plaintiff and Merrill, leads to the conclusion that there was more than a fair preponderance of the evidence that the iron pipe was originally placed in the position as stated by plaintiff and Merrill and as shown on the following sketch.
It becomes necessary to determine the actual boundaries of the Merrill deed.
Merrill subsequently, as above noted, conveyed the property to the Hosicks by a description identical to that contained in his deed from Jelliffe. Prior to the conveyance by the Hosicks to the Engroffs, one Reed J. Washer, a land surveyor, made a survey of the lands at the request of Robert Engroff.
Thereafter, plaintiff caused one Henry J. Ahlers to plot the lands conveyed by Jelliffe to Merrill on a tracing. No actual survey was ever made by Ahlers.
For the purpose of a more intelligent understanding of the questions involved, here follows a sketch showing the *462 location of the lands described in the Jelliffe-Merrill deed by Washer and Ahlers. Ahlers' location is represented by the solid black line and Washer's location by the broken line.

Throughout the following discussion, for the sake of clarity, general reference to the four courses shall be regarded as reference to the Merrill deed, although Ahlers' plotting shows the Merrill first course as three separate courses and Washer's as two separate courses.
Although it was admitted by both Washer and Ahlers that the monument marking the beginning point in the Merrill deed, i.e., "a pipe in the road from Meriden to Lyonsville," was no longer in existence, they agreed upon a common beginning point. The first course as described in the Merrill deed is a straight line 350 feet in length running "along the line of an old stone wall." Both the reference in the first course in the Merrill deed to the "old stone *463 wall" (patently considered by Jelliffe a division wall) and the description of the third course as proceeding "parallel to the old line" lead to the conclusion that it was Dr. Jelliffe's intention that the first course in the Merrill deed should coincide with his easterly boundary, and that he and Merrill believed that the stone wall was erected along that boundary. Actually, what remained of the stone wall at this location demonstrated that it had not been constructed in a straight line, but that there was at least one angle located at the point where Ahlers' third leg or course commences and Washer's second leg or course commences. Washer and Ahlers agree that the easterly boundary of the Jelliffe lands at the southeast corner of his tract was not a straight line, as described in the Merrill deed. Jelliffe and Merrill were in error in presuming that the stone wall along the easterly line of the lands conveyed proceeded in a straight line.
Washer portrays Merrill's first course in two legs or courses and Ahlers in three legs or courses. The effect of Ahlers' testimony is that his location of the easterly line is as well the admitted westerly line of adjoining lands at one time owned by Lyon, and the easterly line of the Jelliffe lands. He further testified that he had surveyed the westerly line of the so-called Lyon lands in 1946, 1956 and 1957 and that he based his location thereof on other conveyances in the chain of title.
It is to be noted in this connection that although the Merrill deed does not specifically place the first course in the common Jelliffe-Lyon boundary, that the beginning point is described as being at a pipe "where the property conveyed joins that of George Lyon." It is a reasonable conclusion that the Merrill first course was intended to run in the common boundary of Lyon-Jelliffe.
Washer gives no reasonable explanation for the location of his first course, except that he proceeded along what he conceived to be the remains of the stone wall. He ignored the Jelliffe-Lyon boundary line. His location of the first course would encompass a portion of the Lyon tract.
*464 Although monuments as a general rule prevail over courses and distances, this rule will not prevail where the result would be absurd and not clearly intended, such as embracing land of a third party. See 6 Thompson on Real Property, § 3327, p. 522 (1924); Post v. Wilkes-Barre Connecting R.R., 286 Pa. 273, 133 A. 377 (Sup. Ct. 1926); Appeals of Borough of Dallas, 169 Pa. Super. 129, 82 A.2d 676 (Super. Ct. 1951). The reference to the stone wall (a monument) should, in the face of the facts, be here ignored.
However, Ahlers gives no reasonable basis for terminating the first course in the Merrill deed (Ahlers' third course or leg) 286.96 feet from the beginning point. Where, as here, no monument is referred to in a grant and none is intended to be afterward designated as evidence of the extent of a course, the distance stated in the grant must govern the location. Negbauer v. Smith, 44 N.J.L. 672 (E. & A. 1882). We conclude, therefore, that the first course in the Merrill deed is as located by Ahlers' first three legs or courses, but that the Ahlers' third leg or course should be continued a distance of 63.04 feet.
It is a general rule in the interpretation of descriptive words in deeds and grants, that courses and distances, admeasurements and ideal lines should yield to known and fixed monuments, natural or artificial, upon the ground itself. Hofer v. Carino, supra; Kalbfleisch v. Standard Oil Co., 43 N.J.L. 259 (E. & A. 1881). A pipe referred to, as in the deed here involved, which is a tangible landmark, is an artificial monument. See 11 C.J.S. Boundaries § 4, p. 544; 6 Thompson, Real Property, § 3327, p. 522 (1924). The exact distance, i.e., 325 feet, referred to in the second course of the Merrill deed, must yield to the actual distance measured in a straight line from the end of the third leg of Ahlers' eastern course, as above corrected, to the iron pipe.
The third course in the deed, being described as "parallel to the old line" was intended to run as shown on the Ahlers plotting of the Merrill third course, exactly parallel to the *465 Jelliffe-Lyon boundary (old line). It should be stated parenthetically that some argument was advanced that the first and third courses must be of identical length, since the third course ran parallel to the "old line." This is a non sequitur. The third course may still run parallel to the old line and not of necessity have to proceed to the same distance specified in the first course. Washer gives no logical or sensible reason for running the third course other than parallel to the first course. Even upon his protraction he ignores the specific direction of the Merrill deed that this course run parallel "to the old line" or parallel to what he considers the Merrill first course. In no circumstance could his location of the Merrill third course be correct.
The fourth course naturally proceeds along the center line of the Meriden-Lyonsville Road from its intersection by the third course to the point and place of beginning. To recapitulate, we therefore find that the Engroffs have title to the lands within the confines of the description as we have outlined, and that plaintiff has title to the balance of the lands shown on the foregoing sketch.
Since the dismissal of the third party complaint against the Hosicks was predicated upon an adjudication vesting the title to the lands as described in the deed from them to the Engroffs, the foregoing conclusion requires a reversal of the dismissal of the third party complaint and a remand to the trial court for trial thereon.
Reversed and remanded as above set forth.