Marilyn J. Lindholm BAZINET

v.

Charles HOWE et al.

and

David CLARK et al.

v.

Charles HOWE et al.

Supreme Judicial Court of Maine.

Argued Jan. 5, 1981.

Decided April 3, 1981.

Smith, Stein & Bernotavicz, Gordon E. Stein (orally), Hallowell, for David Clark, et al.

Gregory J. Farris, Mark E. Susi (orally), Gardiner, for Bazinet.

Sewall, Mittel & Hefferan, Robert Edmond Mittel (orally), Portland, for Howe.

Malcolm Lyons, Augusta, for Tondreau.

Before WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

WERNICK, Justice.

This case is before the Law Court on appeal from a judgment entered in the Superior Court (Kennebec County) in civil actions alleging trespass against real estate. The actions, ultimately consolidated, were brought by plaintiffs Marilyn Bazinet and David and Virginia Clark against defendants Charles and Muriel Howe, and they were precipitated by a dispute over the location on the face of the earth of a boundary line between residential properties of the parties in Hallowell. During the course of the action, pursuant to Rule 53(b) M.R. Civ.P., this issue of the location of the boundary line was submitted to a referee. After a hearing, the referee filed his report, which the Superior Court accepted. The Superior Court's judgment, based on its adoption of the referee's report, fixed the location of the disputed boundary line in a manner settling the dispute in favor of the plaintiffs.

All the parties trace their titles through deeds identifying the disputed boundary by name as either the "Vaughan line" or the "Eastman line." Since the "Eastman line", it is agreed, was merely a derivation of the

"Vaughan line" designation, the focal inquiry was the determination of the location on the face of the earth of the Vaughan line.

The Vaughan line was referred to in the deeds as a portion of the dividing line between "Great Lot 21" and "Great Lot 22" of the "Kennebec Purchase." It became the practice to refer to this particular dividing line as the "Vaughan line" because in 1802 it was the Vaughan family, then owners of a portion of Great Lot 22, who commissioned a survey of a section of the dividing line, apparently for the purpose of subdividing a portion of Great Lot 22. Unfortunately, no record of this survey, performed by Samuel Titcomb, can now be found.

The location of the Vaughan line being the heart of the dispute, and no record existing of the Titcomb survey fixing the Vaughan line, each side obtained the services of a surveyor in an effort to reconstruct its location on the face of the earth. At trial, extensive testimony was presented by each of these surveyors explaining the reasons for locating the Vaughan line as he did. Each surveyor utilized field evidence, the recollections of area residents, and deeds from the disputed area.

The plaintiffs hired Edward Coffin as their surveyor. He did two surveys of the area. He made his first survey (Coffin 1) prior to the commencement of litigation, and in it he located the Vaughan line as a straight line with the bearing N 59°20'W. If accepted as correct, this location of the Vaughan line would give all the disputed property to defendants Charles and Muriel Howe. Mr. Coffin, however, further testified that at the time of his first survey, he was unaware of a series of 1842 conveyances in the disputed area. Later, when he learned of them, he ascertained that they contain information that gave him additional assistance in his efforts to locate the Vaughan line on the face of the earth. For this reason, Mr. Coffin testified, he felt obliged to disavow the correctness of his first survey and to make a second one (Coffin 2). In Coffin 2 the Vaughan line is so located on the face of the earth as to give the entirety of the land in dispute to the plaintiffs.

Defendants engaged William Rollins as their surveyor. We disregard his survey for the purposes of this appeal because defendants themselves have repudiated it and assert as their position on appeal that the correct location of the Vaughan line on the face of the earth is fixed in accordance with the Coffin 1 survey rather than, as held by the referee and the Superior Court, the Coffin 2 survey.

Defendants' contention is that to adopt the Coffin 2 survey, the referee (and the Superior Court) committed the errors of relying on irrelevant evidence and of misinterpreting particular calls of the 1842 deeds.

We deny the appeal and affirm the judgment of the Superior Court because, first, we find ample evidence in the record supporting the referee's finding as to the location of the disputed boundary on the face of the earth, which is a question of fact, *Grant v. Warren Bros. Co.*, Me., 405 A.2d 213 (1979); *Sargent v. Coolidge*, Me., 399 A.2d 1333 (1979); and, second, we find that the record reveals that no other contention by defendants raises an issue of *law*, which is the only kind of issue cognizable on appeal.

Defendants argue that the referee placed total reliance on a granite marker with the number "15" carved on it, which, defendants say, was irrelevant because there was nothing in past deeds or other historical records to connect that marker with the Vaughan line. The contention fails because its premise is incorrect. The discovery of marker 15 was not the sole basis on which Mr. Coffin adjusted his location of the Vaughan line and, therefore, it was not the sole basis of the referee's determination. Coffin's testimony was that he was led to reevaluate his initial conclusion as to the location of the Vaughan line primarily because he became aware of the conveyances made in the disputed area in 1842. Thus, even if the referee, in reaching his conclusion, may have utilized as a makeweight the existence of a stone marker ("15") arguably having

no identifiable connection with the Vaughan line, his finding of fact as to the whereabouts of that line on the face of the earth is not to be upset if it is amply supported by other adequate evidence.

We conclude there was such other evidence that was sufficient to support the referee's acceptance of the location of the Vaughan line as fixed by the Coffin 2 survey. Apart from the existence of granite marker "15", Mr. Coffin testified that he found several numbered stone markers that could be related directly to the original Titcomb survey. These numbered markers were found in areas largely undisturbed by development: a marker numbered with a "5" was found upright, and a marker numbered with a "3" was found on its side. Mr. Coffin's field survey also disclosed the existence of a significant tree line, several old fences and a foundation.

In addition, the "Hinkley houselot" deeds of 1842 have great value as supporting evidence. The Hinkley houselot is in the line of title of the property presently owned by the Peters family. The two 1842 deeds creating this houselot establish that the Vaughan line passed through the houselot. Only the Coffin 2 location of the line would conform to these deeds.

This reference to the corroborative impact of the Hinkley houselot deeds leads into the second of defendants' contentions: that the referee committed error of *law* in that he misinterpreted the series of conveyances in 1842 that included not only the Hinkley houselot deeds but also those leading to the creation of the Eastman strip, so-called. Defendants argue that either the referee ignored the existence of the "Eastman strip" deeds, or if he considered them, he wrongly conceived their import in relation to the Hinkley houselot deeds.

We reject the first alternative of defendants' argument because the referee's opinion plainly discloses that he did consider both the Eastman strip and the Hinkley houselot sets of conveyances.

■ As to the second alternative of argument, we conclude that it can avail defendants nothing because it does not establish that the referee committed an error of *law*.

There neither is, nor could there validly be, a claim by defendants that any of the 1842 conveyances involves ambiguities, or inconsistencies, in its textual language or calls. Without question, each of these deeds plainly, and with internal consistency, describes a parcel of land that does exist in fact somewhere on the face of the earth. The question arising from the 1842 conveyances, therefore, relates *not* to the *legal* matter of the correct interpretation of the meaning of the language of any of the deeds. Rather, the issue pertains to whether by following the textually plain and internally consistent calls of each of the totality of relevant 1842 conveyances, a consistent location of areas on the face of the earth results, and, if not, which among these possible locations on the face of the earth is to be selected. This kind of determination is not one of *law*; it is, rather, a determination of *fact*.

Here, relating the plain and unambiguous calls of the "Eastman strip" set of deeds and of the "Hinkley houselot" set of deeds to the face of the earth produced, without violation of independent legal principles, different locations of the Vaughan line on the face of the earth. The referee resolved this *factual* difficulty by concluding that the totality of the evidence made it more probable than not that the Vaughan line on the face of the earth passed through the Hinkley houselot, and, therefore, the line was located as shown by the Coffin 2 survey.

We decide that this ultimate determination of fact was adequately supported by the evidence and, therefore, must be held conclusive on appeal.

In light of our decision we need not address the alternative position of plaintiff Bazinet, that in any event she owned a portion of the land in dispute by reason of adverse possession.

The entry shall be:

Appeal denied; judgment of the Superior Court affirmed.

All concurring.