**Richard E. BAILEY and Mary Ellen Bailey**

v.

**Carroll F. LOOK.**

Supreme Judicial Court of Maine.

Argued May 4, 1981.

Decided July 31, 1981.

---

Law Offices of Ronald R. Coles, Carletta M. Smith (orally), Machias, for plaintiffs.

Rudman & Winchell, Thomas Z. Hodson (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY and ROBERTS, JJ.

GODFREY, Justice.

Defendant Carroll F. Look appeals from a judgment of the Superior Court declaring the common boundary between parcels of land owned by Look and the plaintiffs. The Superior Court entered judgment for the plaintiffs after adopting a referee's report that found the plaintiffs' placement of the boundary to be correct. On appeal Look contends that the referee erred as a matter of law in concluding that the deed from the parties' common grantor to Look was ambiguous and that extrinsic evidence was admissible to clarify the land description in that deed. We affirm the judgment of the Superior Court.

During hearings before the referee the following evidence was presented which tended to support the plaintiffs' theory of where the disputed boundary line was located:

Look had received title to his property through a deed, dated December 14, 1961, from one J. Dexter Thomas. Thomas had in turn received title to the tract through a deed dated June 30, 1953, from Albert and Julia Richard. In the deed from the Richards to Thomas, the land conveyed was described as follows:

[A] certain lot or parcel of land situate in the town of Jonesboro, county and state aforesaid, bounded and described as follows, to wit: Beginning on the southerly side of U. S. Highway # 1 at an iron bolt driven in the ground at the northwesterly corner of land of Eastern Pulp Wood Company, thence generally southerly by and with the westerly line of land of Eastern Pulp Wood Company and running a distance of 1200 feet, more or less, to an iron bolt driven in the ground; thence generally westerly and running a distance of 1200 feet, more or less, to another iron bolt driven in the ground; thence generally northerly and running a distance of 1200 feet, more or less, to an iron bolt driven in the ground on the southerly side of U. S. Highway # 1; thence generally easterly by and with the southerly side of U. S. Highway # 1 and running a distance of 1200 feet, more or less, to the first mentioned iron bolt, marking the place of beginning.

The deed from Thomas to Look contained an identical description of the tract.

That description of the property resulted from negotiations between Albert Richard and Thomas during the spring of 1953. Thomas had approached Richard with an offer to buy some of Richard's land for use as a gravel pit. The two had agreed on a boundary for Thomas's tract and settled upon a selling price. After Thomas had paid for the land but before he had received a deed, Richard drove several iron bolts into the ground to mark the boundary upon which the parties had agreed. When Richard requested his attorney to prepare a deed to the tract, the attorney asked him whether he knew the distance between each of the iron bolts. Because Richard did not know any of the distances between the bolts, the attorney inserted in the description of the parcel an arbitrary distance of "1200 feet, more or less" between the successive iron bolts. Thereafter, Richard tendered and Thomas accepted a deed indicating that the boundaries of the parcel were marked by iron bolts separated by "1200 feet, more or less." Thomas preserved that description of the tract in his deed to Carroll Look.

After Thomas had sold the tract to Look, Richard conveyed another portion of his property to the plaintiffs, Richard and Mary Ellen Bailey. In part, the deed from Richard to the Baileys described the parcel as bordering on the southern and western boundaries of the tract Richard had conveyed to J. Dexter Thomas.

From 1961, when he purchased his tract, until 1974, Look removed gravel from a pit within the confines of the iron bolts that Richard had driven into the ground. In 1974, however, the Baileys noticed that Look's excavations had crossed over the supposed boundary line and had begun to undermine the Bailey's blueberry fields. Seeking to ascertain whether a trespass had actually occurred, the Baileys hired a surveyor to determine the location of the southern and western boundaries of Look's property. The surveyor discovered the bolts that marked the termini of the southern border but could not find the bolt that would have established the northern terminus of the western border. However, the surveyor testified that, aided by Richard and several persons who had worked in the area where the missing bolt should have been found, he was able to replace that bolt within a few inches of its original position in the ground. Although the bolts the surveyor was able to locate were separated by far less than 1200 feet, the surveyor could not find any other bolts that would have answered the distance calls in Look's deed. Having found or replaced all the bolts mentioned in the deed from Thomas to Look, and reasoning that the bolts should take precedence over the apparently incorrect distance calls of "1200 feet, more or less," the surveyor plotted the southern and western boundaries of Look's property by linking the iron bolts.

On the basis of the evidence recounted above, the referee concluded that the southern and western boundaries of Look's property should be established by connecting the iron bolts. In the referee's view, the iron bolts that Richard had driven into the ground had the status of *monuments for the purpose of establishing the boundaries.* Applying the rule of construction that monuments are to be given precedence over inconsistent distance calls in a description of land in a deed, the referee established the disputed boundary by linking the iron bolts and disregarding the direction in the deed that the bolts were separated by "1200 feet, more or less."

Defendant Look moved the Superior Court to set the referee's report aside on the grounds, among others, that the referee erred in concluding that the deed description of his property was ambiguous and that extrinsic evidence was admissible to remove that ambiguity; that even if the deed was ambiguous, that ambiguity should have been resolved in his favor; and that the referee's ultimate placement of the disputed boundaries on the face of the earth was clearly erroneous. The Baileys moved the Superior Court to confirm the referee's report.

The Superior Court adopted the referee's report. Concerning Look's objections to that report, the presiding justice ruled that the referee properly admitted extrinsic evidence to clarify ambiguities in Look's deed. Because, in the presiding justice's view, the referee's findings of fact were not clearly erroneous and the referee had applied the correct law to those facts, the Superior Court entered judgment for the plaintiffs in accordance with the referee's report.

On appeal Look repeats his objection to the referee's conclusion that extrinsic evidence was admissible to clarify any ambiguities in the description of his property in his deed. Look argues that the inconsistency between the placement of the iron bolts and the distance calls in the deed should have been resolved simply by rejecting the iron bolts as monuments and by describing the parcel as a parallelogram with sides each measuring 1200 feet. Alternatively, Look contends that because, relative to the Baileys, he has the status of a prior grantee from Richard, any ambiguities in his deed should be resolved in his favor. On this second premise, Look asserts that the distance calls should prevail over the monuments because the former describe a larger quantity of land than do the latter. We find Look's arguments unpersuasive.

We have repeatedly noted that the resolution of a boundary dispute involves two distinct inquiries, one legal and one factual. The question of how the boundaries of the land are to be described, through an interpretation of the language of the

deed, is one of law. The question of where the described boundaries may be found on the face of the earth is one of fact. *See, e. g., Bazinet v. Howe,* Me., 427 A.2d 494 (1981); *Perreault v. Toussaint,* Me., 419 A.2d 1009 (1980).

In the present case the disputed boundary was described in Look's deed both by lines between iron bolts and by distances between those bolts. Attempts to survey the land indicated that the distance calls could not be reconciled with the placement of the iron bolts; although iron bolts were present on the property, they were not placed at 1200-foot intervals. Accordingly, the description of the land in the deed presented a latent ambiguity as to the true dimensions of the boundaries. Normally, where a description of land presents a conflict between distance calls and the location of monuments, the deed is to be construed so as to give the monuments controlling force over the distance calls. *Hodgdon v. Campbell,* Me., 411 A.2d 667, 671 (1980). Thus, the referee was correct in concluding that the iron bolts should take precedence over the distance calls in providing the legal description of the boundaries of Look's property.

The referee's next task was to determine, as a matter of fact, where the boundaries of Look's property should be located on the face of the earth. At the time of trial, all the iron bolts mentioned in the deed were in place where the Baileys and Richard predicted they would be found. The referee found as a fact that the iron bolts discovered on the land were those mentioned in the deed, and that therefore those bolts marked the boundaries of Look's land on the face of the earth.

If the referee's factual finding is supported by competent evidence, it will not be disturbed on appeal. M.R.Civ.P. 53(e)(2). *See, e. g., Hodgdon v. Campbell, supra* at 672. The position of two of the iron bolts necessary to establish the southern and western borders was not disputed; only the position of the third bolt, marking the northern terminus of the western border, was challenged by Look. At some time after Richard had installed the third bolt in 1953, it had been removed from the ground. However, the physical disappearance of a monument does not terminate its status as a boundary marker, provided that its former location can be ascertained through extrinsic evidence. 6 G. Thompson, *Real Property* § 3042 (1962). *See, e. g., Marvel v. Regienus,* 329 Mass. 414, 108 N.E.2d 545 (1952); *Seely v. Hand,* 119 N.H. 303, 402 A.2d 162 (1979); *Schroeder v. Engroff,* 57 N.J.Super. 452, 155 A.2d 15 (1959). *See also Williamson v. Gooch,* 103 Me. 402, 69 A. 691 (1908). In the present case, the Baileys' surveyor testified that he had entered the land with Richard and with several other persons who were familiar with the area in which the missing bolt had been located. After conferring with those persons, the surveyor replaced the bolt at a point he believed was "within inches" of the former location of the original bolt. The weight to be given that surveyor's testimony was within the referee's prerogative. *Sargent v. Coolidge,* Me., 399 A.2d 1333, 1339 (1979). Because the record contains competent evidence to support the referee's finding that, in fact, the surveyor replaced the missing iron bolt at its original location, we must accept that factual finding on this appeal.

Because the referee applied correct legal principles in construing the description in the deed of Look's property, and because the record contains competent evidence supporting the referee's location of the boundaries on the face of the earth, we must conclude that the Superior Court was correct in adopting the referee's report and entering judgment in accordance with it.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.