61 N.J. Super. 432 (1960)
161 A.2d 273
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
H.L., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 1960.
Decided May 27, 1960.
*433 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Carmen M. Belli argued the cause for plaintiff-respondent.
Mr. Alfred L. Genton argued the cause for defendant-appellant (Mr. Arthur J. Messineo, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from an order of the Bergen County Court which adjudicated defendant the father of three children born to one A.N. and directed defendant to pay $7 weekly in support of each.
Defendant contends that (1) the proofs were insufficient to sustain the finding of paternity, and (2) in light of defendant's financial circumstances the support allowances are excessive.
The matter was originally heard in the Municipal Court of the City of F. on two complaints brought by the director of welfare of the municipality, presumedly under N.J.S.A. *434 9:17-1 et seq. The first, filed on January 27, 1959, related to the illegitimacy of two children of A.N., C. born January 8, 1956 and B. born December 25, 1957. The second complaint, dated May 19, 1959, concerned L., an illegitimate child born to A.N. on March 18, 1959. The magistrate found defendant to be the father of all three children.
In the County Court A.N. testified that all three were conceived subsequent to her divorce in 1955 and that defendant is their father. Defendant admitted that he had sexual intercourse with A.N., but denied the existence of a carnal relationship at any time when she might have conceived the children. He said he commenced "going out with her" in November 1955 but ceased to do so in January or February 1956; that sexual relations were resumed in 1958 "around the first of the year," but ended in January or February of that year.
Neither H.L. nor A.N. created a favorable impression upon the county judge who observed in his findings:
"Frankly, I view with scepticism the testimony of both, and to put it very mildly, it taxes credulity. I am referring to the testimony of both the plaintiff and the defendant."
Without going into detail, we may say that we share this lack of confidence in the frankness of these witnesses. The judge commented favorably on the testimony of N.U., mother of A.N. However, her testimony added nothing in support of the charges. She said only that she came home on a date in May 1958 to find defendant in a bedroom fully clothed and her daughter in the kitchen.
In the findings adjudicating defendant to be the father of the three children the court did not state the factual basis upon which this conclusion rested. From an examination of the record it is noted that the only evidence in support of this finding was that given by A.N. to the effect that in the critical periods of conception of each of the children she had no sexual connection with anyone other than the defendant.
*435 Dr. Robert Brill, a pathologist and director of laboratories and blood bank at R. Hospital, testified that under his supervision blood was drawn from the defendant, the three children and A.N. on May 6, 1959, and that analysis of the same revealed that there was present a "big C factor" in the blood of B. which was not found in defendant's blood nor that of A.N. It was Dr. Brill's opinion that this definitely excluded defendant as the father of B.
It is settled that medical findings excluding or tending to exclude paternity are not binding on the court. Ross v. Marx, 24 N.J. Super. 25 (App. Div. 1952). Likewise, it is clear that the probative value of the tests is within the sound discretion of the court. Bednarik v. Bednarik, 18 N.J. Misc. 633, 641 (Ch. 1940). It has been said that blood tests can disprove paternity in a great many cases where the tests are administered by specially qualified experts. Cortese v. Cortese, 10 N.J. Super. 152, 156 (App. Div. 1950).
As we have said, reliance upon the testimony of A.N. that she had no sexual connection with any man other than the defendant was indispensable to the respective findings of paternity. The testimony of Dr. Brill, if accepted, would not only have established that defendant is not the father of B. and would have been destructive of A.N.'s testimony on this issue, but also would have cast doubt upon her veracity generally. Thus, Dr. Brill's testimony was of focal importance.
We have reason to doubt that the court in evaluating this testimony attached to it proper significance in either of the aforementioned aspects. As to it the court had this to say:
"Now, as to the blood tests: when we consider these blood tests, we enter upon an area where reliance upon such tests is to be made with a great deal of caution. One reason for that is because the human element enters into it to such an extent. One person draws the blood, places it in a test tube. The test tube is sealed and marked. Then it is placed in an icebox or refrigerator along with many other specimens. Seven or eight technicians as well as doctors *436 have access to that laboratory, to that icebox or refrigerator. And then a couple of days later, it is taken out and the blood is subjected to examination, I have no doubt, by putting it on plates and examining it microscopically, and so forth. Then a doctor, advanced in this particular science, whose capability and integrity I do not question for a minute, evaluates the results of the test. In this particular case Dr. Brill said that the factor big `C' was found in the blood of B., I believe, and that that factor was not found in the blood of either Mrs. A.N. or Mr. H.L., the defendant, and there he stopped.
I had rather expected him to go on and tell me what he had found in the other blood tests which he made, but he stopped right there and no testimony was given by the Doctor to the effect that this evidence constituted infallible proof that this child was not the child of the defendant. I think he said in his testimony the child could not be the child of the defendant, or something of that sort, but I am not satisfied that the blood tests which were made have disproved the paternity of these children." (Emphasis added)
Initially, the necessity of considering the blood tests with "a great deal of caution" is neither expressed nor implied in N.J.S. 2A:83-2. Next, the expectation of the court that the doctor would testify that the tests were "infallible" proof that B. was not defendant's child, and the indication that since the doctor did not so testify the weight of the medical proof was adversely affected, likewise imports a misapprehension of the effect of the medical proofs. And the comment that the court thought that Dr. Brill had testified "that the child could not be the child of the defendant, or something of that sort" is difficult to square with Dr. Brill's testimony that inasmuch as the blood of H.L. does not have the big C factor he can be definitely excluded as the father of the baby. Finally, it is noted that the court concluded that the blood tests which were made did not disprove the paternity of these children. The plain fact is that the only purpose of the doctor's testimony was to exclude defendant as the father of B. It had no bearing whatever on the paternity of C. and L.
Our consideration of the case leads us to conclude that in the respects above noted the exercise of the court's discretion regarding the weight to be attached to the medical *437 evidence evinces a misconception of the factors which were involved in appraisal of such evidence.
Although the appellate court gives great weight to the factual findings of the trial court, having in mind the trial judge's superior opportunity to judge the credibility of the witnesses, the appellate court has the full power to make its own findings and the judgment may be set aside, inter alia, for mistake. R.R. 1:5-4(b); R.R. 2:5; Sun Dial Corp. v. Rideout, 16 N.J. 252 (1954); Schroeder v. Engroff, 57 N.J. Super. 452, 461 (App. Div. 1959). We are satisfied that the testimony of Dr. Brill, when properly assayed, establishes as a matter of probability, if not conclusively, that defendant is not the father of B. and we so hold.
With respect to portions of the judgment relating to the defendant's paternity of C. and L. we conclude that the testimony offered by the State is insufficient to sustain the adjudication particularly in view of the fact that the trial judge himself did not credit the testimony of A.N. However, the expenditure of public funds in support of the children may be involved if final judgment in favor of the defendant is now entered. Moreover, such adjudication may adversely affect the rights of C. and L. to education and support by the defendant in the future if he is indeed their father. R.S. 9:16-2; M. v. F., 60 N.J. Super. 156 (App. Div. 1960). The cause is therefore remanded to the County Court for a new trial on the issues of the paternity of C. and L., or for any other proceeding thereon not inconsistent with this opinion, including the institution of an action under N.J.S.A. 9:16-1 et seq. if that be deemed advisable. Alternatively, the County Court may remand the matter to the municipal court for proceedings in conformance with the foregoing directions. See M. v. F., supra; State v. Gagliardi, 57 N.J. Super. 238, 241 (App. Div. 1959).
Judgment will be entered in favor of the defendant on the complaint relating to the paternity of B.
Reversed and remanded.